TDHS v. Green 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 



ON MOTION FOR REHEARING


 





NO. 3-92-059-CV





TEXAS DEPARTMENT OF HUMAN SERVICES,



 APPELLANT


vs.





GEORGE GREEN,



 APPELLEE


 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT



NO. 480,701, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING



 





 The opinion issued by this Court on March 17, 1993, is withdrawn, and this
opinion is filed in place of the earlier one.

 George Green sued the Texas Department of Human Services ("DHS"), his former
employer, alleging a retaliatory firing in violation of Tex. Rev. Civ. Stat. Ann. art. 6252-16a
(West Supp. 1993) ("the Whistleblower Act" or "the Act"). (1) The trial court rendered judgment
on a jury verdict, awarding Green $3,459,831.87 in actual damages, $10,000,000 in exemplary
damages, $160,000 in attorney's fees, plus pre- and postjudgment interest. DHS appeals. We
will affirm the trial court's judgment.


BACKGROUND


 In 1983, Green began employment with DHS as an architect, with responsibility
for reviewing DHS construction contracts and advising his supervisors as to the contractors'
compliance with contractual terms. During the course of his six-year employment with DHS,
Green observed what he believed was a pattern of fraud and corruption among DHS procurement
officers. (2) Green discussed his concerns about the misconduct with his supervisors, but became
dissatisfied with what he perceived to be a lack of responsiveness to the problems he identified. 
In August 1989, Green advised numerous DHS employees at various levels that he intended to
report the problems to authorities outside DHS.

 Shortly thereafter, in September 1989, DHS began a thorough investigation of
Green's long-distance telephone use. Scrutiny of all calls placed from Green's extension for two
and one-half years revealed only one improper call, carrying a long-distance charge of thirteen
cents. The investigators determined that all other suspect calls were authorized business calls.
DHS referred the results of the investigation, including Green's single violation (the thirteen-cent
call), to the district attorney for prosecution.

 In late October 1989, DHS commenced a second investigation of Green, focusing
on his use of sick leave. (3) This investigation involved an audit of Green's sick-leave records and
covert surveillance of his activities during those working hours when he was excused to receive
physical therapy. The audit revealed several occasions when Green left work to attend therapy,
but no corresponding record existed to show his attendance at the therapy session. DHS
surveillance revealed one occasion on which Green failed to attend a therapy session. (4)

 Based on Green's alleged violations of DHS work rules (involving abuse of sick
leave, falsification of official DHS documents, and telephone misuse), DHS fired Green on
December 12, 1989. DHS referred the matter of the alleged violations to the district attorney's
office, which sought and obtained a grand-jury indictment of Green for falsifying documents, a
third-degree felony. Tex. Penal Code Ann. § 37.10(c) (West Supp. 1993). Green meanwhile
filed suit under the Whistleblower Act on March 9, 1990. The district attorney later offered to
dismiss the criminal charges if Green would drop his whistleblower suit. Green refused. Shortly
before the trial of the criminal case, the district attorney's office dismissed the charges against
Green.

 Green's whistleblower suit was tried to a jury in August and September 1991. The
trial court rendered judgment on a jury verdict finding that DHS had fired Green in retaliation for
his reporting activities and awarding damages. The trial court denied DHS's motion for judgment
non obstante veredicto (n.o.v.) and motion for new trial. Advancing fifteen points of error on
appeal, DHS contends the trial court erred: (1) in refusing to hold that governmental immunity
barred Green's claims; (2) in admitting and excluding evidence; (3) in denying DHS's motions
for judgment n.o.v. and new trial because the evidence is legally and factually insufficient; (4) in
dismissing jurors for cause and in failing to submit DHS's requested jury instructions; and (5) in
denying DHS a fair trial (cumulative error).



DISCUSSION


 In its first point of error, DHS argues that the trial court erred in rendering
judgment on the verdict because governmental immunity bars both the suit and the liability for an
award of damages against DHS, a state agency. (5) DHS asks us to hold that the Whistleblower Act
does not grant public employees the right to sue governmental entities because the Act lacks an
express, unambiguous waiver of governmental immunity. See Duhart v. State, 610 S.W.2d 740,
742 (Tex. 1980) ("It is a well-established rule that for the Legislature to waive the state's
sovereign immunity, it must do so by clear and unambiguous language."). "Unambiguous" means
"susceptible of but one meaning." Lawrie v. Miller, 45 S.W.2d 172, 173 (Tex. Comm'n App.
1932, holding approved).

 DHS argues that the legislature must not have intended to waive governmental
immunity because the Whistleblower Act permits a public employee to recover actual and
unlimited exemplary damages, "as the surreal verdict in this suit demonstrates." DHS maintains
that the Act only creates a cause of action against individual state or local officials and not against
the governmental entity itself as employer. (6)

 The relevant portions of the Act prohibiting retaliation and creating certain
remedies for public employees state,



Sec. 2.  A state or local governmental body may not suspend or terminate the
employment of, or otherwise discriminate against, a public employee who reports a violation of law to an appropriate law enforcement authority if the employee
report is made in good faith.


Sec. 3. (a)  A public employee who alleges a violation of this Act may sue for
injunctive relief, damages, or both.


. . . .


Sec. 4. (a)  A public employee who sues under this Act may recover:


 (1) actual damages;


 (2) exemplary damages;


 (3) costs of court; and


 (4) reasonable attorney's fees.


 (b) In addition to amounts recovered under Subsection (a) of this section,
a public employee whose employment is suspended or terminated in
violation of this Act is entitled to:


 (1) reinstatement in his former position;


 (2) compensation for wages lost during the period of suspension or
termination; and


 (3) reinstatement of any fringe benefits or seniority rights lost
because of the suspension or termination.



 In determining whether the legislature unambiguously waived the State's
governmental immunity with these words, we are guided by this Court's previous examination of
the Act's text. In Travis County v. Colunga, we determined that the statute as a whole evidences
two legislative purposes: (1) to protect public employees from retaliation by their employer when,
in good faith, employees report a violation of law, and (2) in consequence, to secure lawful
conduct on the part of those who direct and conduct the affairs of public bodies. 753 S.W.2d 716,
718-19 (Tex. App.--Austin 1988, writ denied).

 In effecting the first goal, the legislature directed its proscription of retaliatory
firing against a "state or local governmental body," and not against the individual supervisors
through whom that body might act. See § 2. From the legislature's focus on the governmental
body as the fountainhead of the prohibited conduct, we perceive an unambiguous intent to direct
the Act's penalties at the same entity. This understanding is wholly consistent with the Act's
second goal, securing lawful conduct from those who manage the affairs of the governmental
body. In its wisdom, the legislature obviously determined that subjecting the governmental body,
and not the individual agent, to the Act's highest penalties would enhance the Act's deterrent
effect. Because it thus bears the primary risk for violations of the Act, the governmental body
has the principal incentive to oversee the conduct of its agents to the greater protection of public
employees.

 In light of the legislature's purposes, we decline to read the Act as limiting a public
employee's cause of action for retaliation to a suit against an individual supervisor. Indeed, such
an interpretation cannot be reconciled with section 5(a) of the Act, which provides for a civil
penalty not to exceed $1,000 to be imposed against individual supervisors for violations of the
Act. The attorney general or appropriate prosecuting attorney sues to collect this penalty, and
because any funds collected must be deposited in the state treasury's general revenue fund, an
injured public employee derives no benefit from a penalty levied under section 5. See § 5(a), (b).

 Nowhere else does the Act expressly refer to individual supervisors, much less
target them for liability. The language in a statute is presumed to be selected and used with care
and, likewise, every word or phrase in a statute is presumed to be intentionally used with a
meaning and purpose. Chastain v. Koonce, 700 S.W.2d 579, 582 (Tex. 1985). Similarly, every
word omitted from a statute must be presumed to have been excluded for a reason. Cameron v.
Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex. 1981). Thus, the express mention of
individual supervisors in section 5(a) and nowhere else constrains us to interpret the Act's other
sections as excluding additional liability of individual supervisors. Because governmental bodies
(including state agencies) are, therefore, the manifest objects of the Act's other liability
provisions, we must decline DHS's invitation to extend the liability of individual supervisors when
the legislature itself has not done so.

 Other courts have similarly construed the Act in order to accomplish the legislative
goals: "Article 6252-16a has a remedial purpose. It is designed to enhance openness in
government and compel government's compliance with the law of protecting those who inform
authorities of wrongdoing. Accordingly, we construe the statute liberally, and in accordance with
its remedial purpose." Castaneda v. Texas Dep't of Agric., 831 S.W.2d 501, 503 (Tex.
App.--Corpus Christi 1992, writ denied) (citations omitted); see Burch v. City of San Antonio, 518
S.W.2d 540, 544 (Tex.1975) (remedial statutes shall be given most comprehensive and liberal
construction possible); see also Tex. Gov't Code Ann. §§ 312.005, .006 (West 1988). In
Castaneda, the court found substantial compliance with the statute's reporting requirements and
refused to engraft additional prerequisites to filing suit: "A liberal construction does not restrict
the statute, but enlarges its scope and effect to effectuate the true legislative purpose." 831
S.W.2d at 503.

 Even a strict construction of sections 2, 3, and 4 would not lead us to conclude that
the Act, which purports to prohibit retaliation against public employees by state and local
governmental bodies, withholds the authority to sue those very bodies. Under the doctrine of
strict construction, "the operation of the law will . . . be confined to cases which plainly fall
within its terms as well as its spirit and purpose." Coastal States Gas Producing Co. v. Pate, 309
S.W.2d 828, 831 (Tex. 1958) (emphasis added). Suit against a governmental body that retaliates
for whistleblowing activities plainly falls within the terms, as well as the spirit and purpose, of
the Whistleblower Act.

 The Texas Supreme Court has noted the importance of the legislative safeguards
afforded by a whistleblower cause of action:



In a democratic, free enterprise system, a commitment to whistleblowing
represents a fundamental confidence in the ability of individuals to make a
difference. Society can never eradicate wrongdoing, but it can shield from
retaliation those citizens who, urged on by their integrity and social responsibility,
speak out to protect its well-being.



Winters v. Houston Chronicle Publishing Co., 795 S.W.2d 723, 730 (Tex. 1990) (Doggett, J.,
concurring). In Winters, the supreme court declined to override the judicially created doctrine
of at-will employment in order to protect whistleblowers in the private sector, on the theory that
such safeguards are better left to the legislature. Id. at 726. Through the Act, the legislature has
chosen to protect public-sector employees from retaliatory firing. The judiciary cannot, without
hypocrisy, defer to the legislature the decision to protect whistleblowers, only to later eviscerate
the legislature's effort to do so.

 The Whistleblower Act seeks to protect the individual employee against the
collective acts of the agency, the bureaucracy, the institution, the system that retaliates, and does
not seek to protect the employee solely against the acts of an individual supervisor. We conclude
that the Act unambiguously waives the governmental immunity from suit and from liability of state
and local governmental entities in suits seeking redress for retaliation against public employees. 
See Knowlton v. Greenwood Indep. Sch. Dist., 957 F.2d 1172, 1182 (5th Cir. 1992)
(governmental immunity does not bar recovery of punitive damages against school district: "The
plain language of the Act torpedoes this claim."). Complaints about "surreal verdicts" resulting
from the Act's failure to limit liability for actual or exemplary damages should be addressed to
the legislature, not the judiciary. Concluding that the Whistleblower Act waives the State's
governmental immunity from suit and from liability, (7) we overrule DHS's first point of error.

 In its second point of error, DHS argues that the trial court erred in admitting into
evidence DHS's administrative and investigative budgets. Relying on the holding in Lunsford v.
Morris, 746 S.W.2d 471, 472 (Tex. 1988), that a "defendant's `ability to pay' bears directly on
the question of adequate punishment and deterrence[,]" Green proposed three monetary measures
for the jury to consider in assessing actual and exemplary damages: (1) the overall DHS budget
(exhibit 84); (2) DHS's administrative budget (exhibit 83); and (3) DHS's investigative budget
(exhibit 85). The court excluded the overall budget because it contained many federal "pass-through" funds, but admitted DHS's administrative and investigative budgets.

 On appeal, DHS asserts that consideration of these monies, all of which had been
appropriated by the legislature for specific expenditures and none of which were under DHS's
exclusive control, constitutes error "because [consideration of the funds as a measure of damages]
alters the constitutionally prescribed appropriations process." Green replies that, by withdrawing
its objection to the admission of this evidence, DHS has failed to preserve this point of error. 
Tex. R. App. P. 52(a); Tex. R. Civ. Evid. 103(a). In support of this argument, Green cites the
following colloquy:



[COUNSEL FOR DHS]: Your honor, I think we can live with [Exhibits] 83 and
85 given the fact that the Court has excluded Exhibit 84, we clearly have objected
to and which it is our understanding the court has excluded. . . . If that's our
understanding, that the 5.5 billion is out of the picture, no reference, no exhibit,
then we can live with 83 and 85.


THE COURT: Okay.


[COUNSEL FOR GREEN]: That's my understanding of the Court's ruling.


THE COURT: Okay, that's mine, too.


[COUNSEL FOR GREEN]: We've got a deal.



We agree with Green that counsel for DHS, by acknowledging the prior agreement to withdraw
any objection and by asserting different grounds from those now urged on appeal, did not
sufficiently call this objection to the trial court's attention. Further, DHS requested no ruling and
none was made. Nothing is preserved for our review. Nevertheless, DHS suggests that under
both statute and separation-of-powers principles, the attorney general's failure to preserve error
cannot operate to the state's prejudice.

 The statute on which DHS relies provides that "[a]n admission, agreement, or
waiver made by the attorney general in an action or suit to which the state is a party does not
prejudice the rights of the state." Tex. Gov't Code Ann. § 402.004 (West 1990) (derived from
Act approved May 11, 1846, 1st Leg., R.S., § 14, 1846 Tex. Laws 206, 208, reprinted in 2
H.P.N. Gammel, The Laws of Texas 1822-1897, at 1512, 1514 (Austin, Gammel Book Co. 1898)
(since repealed and reenacted in 1879, 1895, 1911, and 1925 Revised Statutes, and codified as
Tex. Gov't Code Ann. § 402.004 (West 1990))). DHS seems to argue that section 402.004
shields the state from errors that its counsel, the attorney general, might make in the course of
pursuing or defending a lawsuit in which the state is involved. However, the weight of authorities
interpreting section 402.004 shows it to be a legislative limitation on the affirmative powers and
discretion granted to the attorney general. See, e.g., Bell v. State, 727 S.W.2d 806, 809 (Tex.
App.--Austin 1987, writ ref'd n.r.e.) (state not bound when assistant attorney general releases
former party opponent from compliance with judgment rendered in state's favor); Department of
Pub. Safety v. Great S.W. Warehouses, 352 S.W.2d 493, 495 (Tex. Civ. App.--Austin 1961, writ
ref'd n.r.e.) (attorney general may not affirmatively waive governmental immunity from suit, even
at state agency's request, as waiver is exclusive prerogative of legislature); State v. Reagan
County Purchasing Co., 186 S.W.2d 128, 135 (Tex. Civ. App.--El Paso 1944, writ ref'd w.o.m.)
(attorney general lacks power to enter agreements determining terms on which public domain may
be sold).

 The cases cited show how courts have interpreted section 402.004 to define the
scope of the attorney general's authority in its representation of the state. No court, however, has
construed section 402.004 to generally release the state from observance, through its counsel, of
the rules of procedure and evidence or to assure the state's "error free" participation in the trial
process. (8)

 On the contrary, the principle is well-established that when the state enters the
courts as a litigant, it must observe and will be bound by the same evidentiary and procedural
rules that apply to all litigants. See Lowe v. Texas Tech Univ., 540 S.W.2d 297, 301 (Tex. 1976);
Texas Dep't of Corrections v. Herring, 513 S.W.2d 6, 7-8 (Tex. 1974); Fristoe v. Blum, 45 S.W.
998, 999 (Tex. 1898); Railroad Comm'n v. Arkansas Fuel Oil Co., 148 S.W.2d 895, 898 (Tex.
Civ. App.--Austin 1941, writ ref'd); Perone v. Texas Dep't of Corrections, 583 S.W.2d 880, 882
(Tex. Civ. App.--Tyler 1979, writ dism'd). 

 We hold section 402.004 inapplicable in the context of the attorney general's failure
to preserve error by timely objection at trial. We recognize and reaffirm the principle that the
state is normally not bound by the acts of its employees. See Lowe, 540 S.W.2d at 298; Dillard
v. Austin Indep. Sch. Dist., 806 S.W.2d 589, 592 (Tex. App.--Austin 1991, writ denied). 
However, a necessary corollary to the state's waiver of its governmental immunity from suit is
a limited waiver of that immunity as to the acts of the state's counsel, the attorney general. 
Although the state can by statute limit the authority and discretion of its counsel, when the state
submits to suit and enters the courts as a party litigant, it likewise submits to the procedural and
evidentiary rules that govern the efficient administration of the judicial system. Indeed, the
integrity of the judicial-review process turns, in part, on the requirement that litigants preserve
error in the trial court and thereby afford that court an opportunity to correct any errors.

 The facts here reveal no affirmative effort by the attorney general to admit, agree,
or waive any right of the state in violation of Tex. Gov't Code Ann. § 402.004. On the contrary,
DHS, through the attorney general, simply failed to abide by the express procedures mandated
for the preservation of error. See Tex. R. Civ. Evid. 103(a)(1). We can discern no reason to
relieve DHS from compliance with the rules of evidence when the weight of authority so clearly
teaches that the state is bound to their strictures just like any other litigant.

 We likewise reject DHS's apparent reliance on separation-of-powers principles to
challenge the damages award. We note that the Whistleblower Act does not suggest an
appropriate benchmark for assessing actual or exemplary damages under the statute, and perhaps
the legislature should reconsider the Act's silence on this point. DHS insists that allowing
unelected jurors to award punitive damages based on an agency's budget amounts to taxation
without representation in violation of constitutional principles. We believe this argument
untenable, given that Green must still request a legislative appropriation to collect the damages
awarded him. See Larry Schoenbrun, Sovereign Immunity, 44 Tex. L. Rev. 151, 169 (1965); see
also Act of Aug. 30, 1991, 72d Leg., 1st C.S., ch. 18, § 31, 1991 Tex. Gen. Laws 352, 368
(appropriating funds for and directing payment of miscellaneous claims and judgments); Act of
Aug. 30, 1991, 72d Leg., 1st C.S., ch. 19, 1991 Tex. Gen. Laws 365, 1034 (appropriating funds
for support of branches of government and prescribing conditions, limitations, rules and
procedures for expending appropriated funds). We overrule DHS's second point of error.

 In point of error three, DHS challenges the legal and factual sufficiency of the
evidence to support the finding that Green's whistleblowing activities provoked DHS's retaliation. 
This point presents two components for analysis: (1) does the evidence support a finding that
Green engaged in whistleblowing, and (2) if so, does the evidence support a finding that the
whistleblowing is causally related to Green's termination?

 When both legal- and factual-sufficiency points are raised, we must first examine
the legal sufficiency of the evidence. Glover v. Texas Gen. Indem. Co., 619 S.W.2d 400, 401
(Tex. 1981). In reviewing a no-evidence point, we may consider only the evidence and inferences
that tend to support the jury's finding and disregard evidence and inferences to the contrary. 
Sherman v. First Nat'l Bank, 760 S.W.2d 240, 242 (Tex. 1988). If there is any evidence of
probative value supporting the finding, we must uphold the jury's finding and overrule the point
of error. In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951). If the finding is supported by
legally sufficient evidence, we must then weigh and consider all the evidence, both in support of
and contrary to the challenged finding. Id. The jury's finding must be upheld unless it is so
against the great weight and preponderance of the evidence as to be manifestly unjust or
erroneous. Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986). We are not free to
substitute our judgment for the jury's simply because we may disagree with the verdict. Herbert
v. Herbert, 754 S.W.2d 141, 142 (Tex. 1988).

 The Whistleblower Act prohibits a state agency from terminating an employee for
reporting "a violation of law to an appropriate law enforcement authority if the employee report
is made in good faith." § 2. An employee has the burden of proving that he was terminated in
retaliation for his whistleblowing activities. (9) § 3(b). The Act affords a presumption of retaliation
to an employee who is terminated within ninety days of reporting illegal activities. Id.

 Record testimony reflects that Green observed and reported illegal activities at
various DHS construction projects in the summer of 1989, including suspected kickbacks to
procurement officers and offers of jewelry and other gifts from contractors to DHS supervisors
who were asked to overlook noncompliance at construction sites. Green reported to his
supervisors what he believed to be a pattern of fraud and corruption; they took no corrective
measures. In August 1989, Green announced his intention to report the violations to authorities
outside the agency. On October 17th, Green delivered a report discussing his concerns to Ron
Lindsey, DHS Commissioner, but received no response. On October 24th, Green met with
Representative Jack Vowell, chairman of the House Budget Oversight Committee for Human
Services, and reported extortion, kickbacks and illegalities in connection with ten construction
projects.

 In September 1989, DHS ordered an investigation of Green's "telephone abuse." 
Even when certain suspect calls apparently giving rise to the investigation turned out to be
authorized, DHS did not curtail the telephone investigation. Rather than handle any unauthorized
calls as an administrative matter, DHS tried to prosecute Green for an unauthorized thirteen-cent
call. Next, DHS began an unprecedented investigation of Green's sick leave; at one point in this
investigation, five investigators followed Green because he supposedly missed a physical therapy
session. On December 12th, DHS simultaneously terminated the telephone and sick-leave
investigations, referred both matters to the district attorney for criminal prosecution, and fired
Green. We conclude that this is more than the scintilla of evidence required to defeat the no-evidence challenge to the jury's finding that Green's whistleblowing activities resulted in DHS's
retaliatory firing; we also hold that the finding is factually sufficient. We overrule DHS's third
point of error.

 In point of error four, DHS complains of the trial court's refusal to grant a
continuance and refusal to allow untimely supplementation of interrogatory answers. Green filed
his original petition in this case on March 9, 1990. On November 6, 1990, Green notified DHS
that the cause was set for a jury trial on July 22, 1991. Not until May 14, 1991, just over two
months before the trial setting, did DHS serve its first set of interrogatories. Green timely filed
his responses to the interrogatories on June 12th, designating six expert witnesses. On June 17th,
DHS requested a continuance to allow it time to depose the experts named in Green's answers to
DHS's interrogatories and to find rebuttal experts for the defense. In its motion for continuance,
DHS argued that before June 13, 1991, it had "no knowledge or even suspicion" that Green would
designate six experts "barely one month prior to trial." DHS's ignorance of Green's experts is
clearly attributable to its own failure to inquire about them previously.

 The decision to grant or deny a continuance is committed to the trial court's sound
discretion. State v. Crank, 666 S.W.2d 91, 94 (Tex.), cert. denied, 469 U.S. 833 (1984). A
party's failure to timely conduct discovery does not require the granting of a continuance. State
v. Wood Oil Distrib., Inc., 751 S.W.2d 863, 865 (Tex. 1988). Although DHS's want of diligence
in taking discovery in this case is less egregious than the plaintiff's in Wood Oil, the record does
not disclose the clear abuse of discretion needed to justify our interference with that discretion. 
See Villegas v. Carter, 711 S.W.2d 624, 626 (Tex. 1986). Moreover, DHS failed to comply with
Tex. R. Civ. P. 252, which requires the movant for continuance to make affidavit showing that
it has used due diligence in seeking to procure the deposition testimony sought. DHS's sole
explanation for its want of diligence was that counsel signing the sworn motion for continuance
had been assigned the case only two weeks before. The motion fails to explain why DHS's
counsel previously involved in the case failed to pursue discovery diligently. Lacking clear
indications in the record that the trial court abused its discretion in denying the continuance, we
decline to overturn its decision. See id.

 Rule 215(5) requires a showing of good cause to supplement interrogatory answers
within thirty days of trial. Tex. R. Civ. P. 215(5). DHS filed its motion for leave to supplement
on July 15th, only seven days before the established trial date. Following a hearing on motions
in limine and after jury selection began, the trial was recessed to summon additional venire
members. At the conclusion of voir dire, the case was again recessed, this time until August 26th. 
DHS argues that, because presentation of evidence did not commence until fifty-two days after
it sought leave to supplement, its request became timely. DHS cites H.B. Zachry Co. v.
Gonzales, 36 Tex. Sup. Ct. J. 526 (Feb. 3, 1993), as support for its position. Although the lower
court proceedings in H.B. Zachry are factually similar to the instant case, a critical distinction
exists. There, the plaintiff whose witnesses were excluded requested that the trial court reconsider
the ruling once it appeared that the resetting of the trial date would make the plaintiff's
supplementation of interrogatory answers timely. Id. at 527 n.1. When the trial court refused,
the plaintiff sought a writ of mandamus. The supreme court compelled the trial court to allow
supplementation of the plaintiff's interrogatory answers.

 DHS, unlike the plaintiff in H.B. Zachry, did not file an additional motion for leave
to supplement during either recess and thus failed to give the trial court a chance to reconsider its
prior ruling. Absent such a request, the trial court is not obligated to reconsider a ruling that was
proper when made. We hold that the trial court properly required DHS to show good cause for
supplementing interrogatory answers seven days before the trial setting and properly denied the
request because good cause was not shown. By failing to move the trial court to reconsider its
ruling when it appeared that the actual trial would not commence until more than thirty days after
the initial request to supplement, DHS waived any potential error. We overrule DHS's fourth
point of error.

 In points of error five and six, DHS complains the trial court improperly excluded
nine witnesses based on the court's conclusion that DHS had failed to timely supplement its
responses to Green's interrogatories. A person who has not been properly identified in response
to an interrogatory may not testify unless good cause is shown for the failure to identify. 
Alvarado v. Farah Mfg. Co., 830 S.W.2d 911, 915 (Tex. 1992). The trial court's determination
of good cause is subject to review only for abuse of discretion. Morrow v. H.E.B., Inc., 714
S.W.2d 297, 298 (Tex. 1986). DHS completely failed to identify four of the persons whom it
later sought to call as witnesses. As good cause for its failure, DHS contends that it was unaware,
until Green responded to DHS's interrogatories forty-one days before trial, that it would need to
call these persons as witnesses. The record reflects, however, that DHS had adequate information
from which it should reasonably have anticipated its need for these witnesses. Moreover, by
having waited so long to begin discovery, DHS has itself to blame for the fact that it did not
receive Green's interrogatory responses sooner than ten days before the supplementation deadline. 
Parties may not rely on the good-cause exception in Rule 215(5) to evade their duty to engage in
full and timely discovery. See Clark v. Trailways, Inc., 774 S.W.2d 644, 646 (Tex. 1989), cert.
denied, 493 U.S. 1074 (1990).

 The remaining five witnesses were barred from testifying because DHS
inadequately identified them and failed to timely supplement its interrogatory responses. Green
had requested the full name, address, and telephone number of all persons with knowledge of facts
relevant to the suit; DHS provided only the following data:



Debbie Baylor, St. David's Hospital

Theresa Ortiz, STAART

Scott Hutchison, Hills Fitness Center

Mark Barber, St. David's Hospital

Susan Wagner, Hills Medical Group.



The record shows that, prior to the supplementation deadline, Ortiz, Wagner, and Hutchison each
changed employers; Hutchison moved to Fort Worth and Ortiz married, changing her surname
to McBrayer. Green was also unable to contact Baylor and Barber because DHS misdesignated
their workplace as St. David's Hospital, located at 919 East 32nd Street, when in fact they were
officed at Park St. David's, located at 900 East 30th Street. DHS offered no good-cause
justification for its failure to supplement its interrogatory responses to correct the inaccuracies. 
Based on the record presented, we cannot say that the trial court abused its discretion in
preventing these persons from testifying. 

 DHS cites three recent supreme court cases that have permitted unidentified parties
to the suit to testify in certain limited circumstances. See Henry S. Miller Co. v. Bynum, 836
S.W.2d 160, 162 (Tex. 1992); Rogers v. Stell, 835 S.W.2d 100, 101 (Tex. 1992); Smith v.
Southwest Feed Yards, 835 S.W.2d 89, 91 (Tex. 1992). The common thread running through
these cases is that an opponent objecting to the unidentified party's testimony had reason to
anticipate that the party would be a witness based on the party's other discovery responses or
deposition testimony. None of the cases involves the sort of failure to correct misleading answers
or to identify nonparties that occurred in the instant case. Therefore, we believe the policy
underlying those decisions is not applicable to the witnesses and rebuttal witnesses excluded in
this cause. DHS failed to show good cause for its failure to identify these witnesses; therefore,
the trial court did not abuse its discretion in excluding the complained-of witnesses. We overrule
DHS's fifth and sixth points of error.

 In points of error seven, eight and nine, DHS complains of the trial court's rulings
on the admission or exclusion of certain evidence. To prevail on these points of error, DHS must
show that the trial court abused its discretion and that any error was reversible error. Syndex
Corp. v. Dean, 820 S.W.2d 869, 873 (Tex. App.--Austin 1991, writ denied); see Roach v. Roach,
735 S.W.2d 479, 485 (Tex. App.--Houston [1st Dist.] 1987, no writ) ("Reversible error is not
ordinarily shown in connection with rulings on questions of evidence unless the whole case turns
on the particular evidence excluded.").

 An appellant must show the trial court abused its discretion in excluding evidence
not properly identified in response to discovery requests. Tex. R. Civ. P. 215(5). DHS sought
to introduce evidence of its policies concerning telephone monitoring and employee contact with
legislators. These documents were excluded because they had not been produced in response to
Green's discovery requests for:



(1) Any and all documents relating to the allegations, investigations and
documentation of George Green's misuse of DHS telephones;


(2) Any and all documents that pertain to surveillance . . . [or] termination of
George Green; and 


(3) Any documents containing personnel policies in effect in December 1989 that
are not in the personnel manual.



We hold that the court did not abuse its discretion in applying Rule 215(5) to exclude the
evidence. DHS has not met its burden to show an abuse of discretion in the trial court's exclusion
of testimony and exhibits relating to posttermination administrative remedies. We overrule points
of error seven and eight.

 In point of error nine, DHS complains that four exhibits admitted into evidence
were irrelevant and prejudicial, and should have been excluded. See Tex. R. Civ. Evid. 403. We
have reviewed the statement of facts regarding the admission of each of these four exhibits and
conclude that DHS failed to preserve error as to the admission of plaintiff's exhibits 96, 107 and 108, and has failed to show any abuse of discretion in the admission of plaintiff's exhibit 99. 
See Tex. R. App. P. 52(a); Tex. R. Civ. Evid. 103(a). We overrule the ninth point of error.

 DHS complains in point of error ten that six venire members were improperly
excused for cause, and DHS was improperly denied six additional peremptory strikes. DHS
argues that the trial court, at Green's request, dismissed for cause jurors that should only have
been dismissed through the exercise of Green's peremptory challenges. DHS maintains that,
because the trial court improperly sustained six of Green's challenges for cause, DHS should have
been granted additional peremptory challenges so as to equalize the "strikes." DHS does not,
however, complain that the court failed to dismiss for cause any juror that DHS challenged as
unfit to serve. DHS cites no authority for the proposition that a court's dismissal for cause of six
venire members entitles the nonmoving party to additional peremptory "strikes." The trial court
may consider the venire member's answers and "other evidence" in determining if a juror is
disqualified by law or is otherwise "unfit" to sit on the jury. Tex. R. Civ. P. 228. The reviewing
court shall defer to the trial court's evaluation of a venire member's demeanor and credibility, and
consider the evidence in a light favorable to upholding the trial court's decision. Gum v.
Schaefer, 683 S.W.2d 803, 807 (Tex. App.--Corpus Christi 1984, no writ); Phillips v. State, 701
S.W.2d 875, 880-81 (Tex. Crim. App. 1985). After reviewing the evidence, we uphold the trial
court's decision and overrule point of error ten.

 In point of error eleven, DHS complains of the trial court's error in allowing expert
witnesses Allen Hill and Barbara Jordan to express the opinion that the cumulative acts of DHS
constituted retaliation against Green and in allowing Professor Jordan to testify as to the
importance of deterring retaliation against whistleblowers. "The trial court has broad discretion
in determining whether to allow expert testimony and the court's action will not be disturbed
absent a clear abuse of discretion." City of Houston v. Leach, 819 S.W.2d 185, 190 (Tex.
App.--Houston [14th Dist.] 1991, no writ). Mr. Hill expressed his opinion in the following
colloquy:



Q: Do you have an opinion as to the referral of this 13-cent telephone call for
prosecution?


A: Yes, sir. In my opinion, it was a retaliatory act.



DHS did not timely object to Mr. Hill's opinion about retaliation and has thus waived any
complaint on appeal. See Tex. R. App. P. 52(a); Tex. R. Civ. Evid. 103(a).

 DHS did timely object to Professor Jordan's opinion testimony as to whether Green
had been the victim of retaliation. It is not error for an expert witness to testify on a mixed
question of law and fact. Tex. R. Civ. Evid. 704; Birchfield v. Texarkana Memorial Hosp., 747
S.W.2d 361, 365 (Tex. 1987) (not error for expert witness to testify that certain conduct
constituted "negligence," "gross negligence," and "heedless and reckless conduct," and that
certain acts "proximately caused" plaintiff's injury). We conclude that the trial court properly
permitted Professor Jordan to offer her opinion, based on facts provided her, that Green had been
the victim of retaliation.

 In this same point of error, DHS complains that it was error to allow Professor
Jordan to testify as to the importance of deterring retaliation against whistleblowing activities. 
At trial, DHS grounded its objection on the fact that the content and the importance of the statute
were not contested. However, the content of the statute is at issue because DHS maintains the Act
fails to waive governmental immunity. Therefore, DHS cannot be heard to complain of testimony
emphasizing the public policy served by prohibiting the government's retaliation against public
servants who report wrongdoing within their purview. Additionally, the importance of deterring
egregious conduct is tied to the issue of the adequacy of exemplary damages. See Lunsford, 746
S.W.2d at 472-73. We conclude that the trial court did not abuse its discretion in permitting this
additional testimony by Professor Jordan, and we overrule point of error eleven.

 In points of error twelve, thirteen and fourteen, DHS complains of trial-court errors
related to the jury charge. DHS argues that the court erred in refusing its proposed instructions
regarding proximate cause and inquiring into Green's good faith in reporting the alleged violations
at DHS. We disagree. The causal link between Green's whistleblowing and DHS's retaliation
was submitted as, "[D]id Defendant retaliate against Plaintiff for reporting . . . violations of law?" 
This follows the jury question used in another whistleblower case. See City of Ingleside v.
Kneuper, 768 S.W.2d 451, 453 n.1. DHS requested that the jury be instructed that DHS would
not be liable if it "would have taken the same actions . . . without consideration of Plaintiff's
reports." Because Green's question required the jury to find that DHS fired Green for his
reporting activity, DHS's proposed instruction added nothing. Moreover, Green's submission
followed the practice recognized in employer-retaliation cases brought under the Texas Worker's
Compensation Act. See Tex. Rev. Civ. Stat. Ann. art. 8307c (West Supp. 1993); 2 State Bar of
Texas, Texas Pattern Jury Charges PJC 29.01 (1989); see also Santex, Inc. v. Cunningham, 618
S.W.2d 557, 558-59 (Tex. Civ. App.--Waco 1981, no writ).

 The causal link between DHS's retaliation and Green's damages was submitted as
"what . . . damages, if any . . . resulted from the retaliation?" This submission required a prior
finding of retaliation in question one. However, DHS sought to interpose a proximate-cause
instruction, traditionally used in submission of common-law negligence actions. In wrongful-termination cases, by contrast, the proper inquiry is whether plaintiff's damages resulted from
defendant's conduct. Murray Corp. v. Brooks, 600 S.W.2d 897, 904 (Tex. Civ. App.--Tyler
1980, writ ref'd n.r.e.) ("There is no requirement . . . that the violation . . . be a proximate cause
of the damage suffered by an employee; instead it only requires that the damages suffered be a
result of the violation.").

 As to the matter of Green's good faith, DHS proposed for submission an instruction
requiring that Green's report was made "in good faith rather than for personal reasons," and that
Green "had reasonable cause to believe that the [reported] activities would have a probable
adverse affect on the public." We believe DHS's proposed submission overemphasizes a
plaintiff's subjective motive for reporting violations and ignores the plaintiff's belief that the
reported conduct is a violation of law. As one court recently observed, "if an actual violation of
law is reported, then even an admittedly venal intent in reporting it would not forfeit the
[Whistleblower] Act's protection." Lastor v. City of Hearne, 810 S.W.2d 742, 744 (Tex.
App.--Waco 1991, writ denied). Hence, the good-faith requirement can be given effect only if it
protects the employee from retribution for reporting an incident that turns out not to be a violation
of law. Id.

 As the Lastor court's construction of the Act demonstrates, the focus of the good-faith requirement is the employee's belief that the conduct reported is violative of law, not the
employee's motive for reporting the conduct. The necessary inquiry, then, is whether an
employee's belief that the reported conduct violates the law is objectively reasonable. Although
the plaintiff's subjective motive may have some relevance, motive is not, contrary to DHS's
proposed instruction, the principal focus for inquiry. Consequently, DHS's proposed submission
was properly refused.

 A trial court is required to submit such explanatory instructions and definitions as
would be proper to enable the jury to render a verdict. Tex. R. Civ. P. 277. A trial court's
refusal to submit requested instructions will not be overturned on appeal unless the court abused
its discretion. Magro v. Ragsdale Bros., 721 S.W.2d 832, 836 (Tex. 1986). Because the trial
court properly submitted the matters of causation and good faith, we conclude that no abuse of
discretion exists to justify reversal. We overrule points of error twelve, thirteen, and fourteen.

 By its fifteenth point, DHS makes three distinct assignments of error. First, DHS
complains that the trial court erred in permitting Green to present the edited video-tape deposition
testimony of three witnesses. DHS complains that the editing involved extensive splicing and
mismatching questions and answers, so that the testimony as offered was misleading. No rule
requires a deposition to be read or played before the jury in chronological order. As a matter of
trial strategy, a party is entitled to offer evidence in the order that will most effectively present
its case, provided such presentation does not convey a distinctly false impression. Jones v.
Colley, 820 S.W.2d 863, 866 (Tex. App.--Texarkana 1991, writ denied). Assuming, arguendo,
that the edited video-tape testimony could have been misleading, there was no harm because the
trial court allowed DHS to present its own video tape of the same witnesses immediately following
the showing of Green's tape. See id.; Tex. R. Civ. Evid. 106.

 In its second complaint under point fifteen, DHS argues that the trial court erred
in refusing to submit a jury question on mitigation of damages. DHS had the burden to show the
amount by which Green's damages were increased through his alleged failure to mitigate. See
Lakeway Land Co. v. Kizer, 796 S.W.2d 820, 824 (Tex. App.--Austin 1990, writ denied). By
failing to present evidence of that amount, DHS failed to carry its burden. Consequently, because
DHS did not offer any proof, the submission as to mitigation of damages would have been
improper, and the trial court properly refused the submission. See Cocke v. White, 697 S.W.2d
739, 744-45 (Tex. App.--Corpus Christi 1985, writ ref'd n.r.e.).

 Finally, DHS complains that all of the trial court's rulings taken together deprived
DHS of a fair trial. Having found no error in any of the trial court's rulings, we hold that there
is no merit in this contention. DHS's fifteenth and final point of error is overruled.



CONCLUSION


 Having sustained none of DHS's points of error, we affirm the trial court's
judgment.



 

 Bea Ann Smith, Justice

[Before Justices Powers, Aboussie and B. A. Smith]

Affirmed

Filed: May 19, 1993

[Publish]

1.   Except as otherwise indicated, all citations to statutory section numbers will be to
the Whistleblower Act.
2. [2]  Green testified about conduct contributing to his concerns, including:


(1) procurement officers accepting gifts from private companies that leased
building space to DHS;


(2) a contractor offering discount jewelry to DHS employees;


(3) fire control systems in DHS San Antonio headquarters failing to meet
specifications;


(4) contract and lease fraud;


(5) violations of state purchasing guidelines;


(6) violations of prohibitions against using funds for external modification or
repair;


(7) improper asbestos abatement, exposing DHS clients and employees to 
asbestos dust; and


(8) panelling in a building leased by DHS emitting formaldehyde.
3. [3]  As a result of a job-related back injury sustained in December 1988, Green required
physical therapy. The therapy, prescribed under the workers' compensation program, was
approved by Green's supervisors. Green was permitted to attend therapy sessions during
working hours.
4. [4]  The discrepancies evidently arose from Green's failure to sign in consistently when
attending therapy sessions. The one clear instance of nonattendance occurred because Green
was turned away from his therapy session due to an expired prescription. After visiting his
doctor to renew the prescription, the brakes on his car allegedly failed, making it impossible
for him to attend the session that day.
5.   The state's governmental immunity consists of two basic principles of law. First,
the state as sovereign cannot be sued without its permission. E.g., Hosner v. DeYoung, 1
Tex. 764, 769 (1847); Board of Land Comm'rs v. Walling, Dallam 524, 525-26 (Tex. 1843);
Dillard v. Austin Indep. Sch. Dist., 806 S.W.2d 589, 592 (Tex. App.--Austin 1991, writ
denied). The doctrine bars suits against the state unless the state has expressly given its
consent to be sued. E.g., Missouri Pac. R.R. v. Brownsville Navigation Dist., 453 S.W.2d
812, 814 (Tex. 1970). Second, the state has immunity from liability even though the state has
consented to be sued. Id. at 813; State v. Isbell 94 S.W.2d 423, 424 (Tex. 1936); Dillard,
806 S.W.2d at 592.
6. [6]  In paragraph II of their third amended answer, DHS and the individual agency officials
who were later dismissed took the opposite position, arguing that the Act "does not provide a
private right of action against individual state officials."
7.   We note that our construction of the Whistleblower Act coincides with the views of
at least four justices of the supreme court, who recently observed that "[t]he Declaratory
Judgments Act contains no explicit waiver of sovereign immunity such as those found in
the Tort Claims Act and the Whistleblower Act." See Lee v. Downey, 36 Tex. Sup. Ct. J.
30 (Oct. 7, 1992), at 362 (Dec. 16, 1992) (Gonzales, J., dissenting, joined by Phillips, C.J.;
Hecht, Cornyn, JJ.).
8. [8]  We are aware of only one case involving § 402.004 in which an inadvertent error of the
attorney general was held not binding on the state. See Employees Retirement Sys. v. Bass,
840 S.W.2d 710, 713-14 (Tex. App.--Eastland 1992, no writ). There, the court of appeals
held that § 402.004 precludes the binding effect of deemed admissions under Tex. R. Civ. P.
169 when, through clerical error, the attorney general fails to respond to requests for
admissions. Id. We question whether § 402.004 is properly applied to accidental omissions in
addition to volitional acts of the attorney general. However, because the Bass court construed
§ 402.004 in the context of deemed admissions, we believe its holding has no bearing on the
question before us.

9. [9]  "Whistleblowing" has been defined as "the act of a man or woman who, believing that
the public interest overrides the interest of the organization he serves, publicly `blows the
whistle' if the organization is involved in corrupt, illegal, fraudulent, or harmful activity." 
Winters, 795 S.W.2d at 727 (Doggett, J., concurring) (citing Whistleblowing: The Report of
the Conference on Professional Responsibility vii (R. Nader, P. Petkas & K. Blackwell eds.
1972)).