NO. 07-04-0350-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



JANUARY 4, 2006



______________________________




IN THE INTEREST OF M.L.B.




_________________________________



FROM THE COUNTY COURT OF FLOYD COUNTY;



NO. 2004-06; HONORABLE WILLIAM D. HARDIN, JUDGE



_______________________________



Before REAVIS and CAMPBELL and HANCOCK, JJ.

MEMORANDUM OPINION

 Appellant M.L.B. challenges an order of disposition committing him to the Texas
Youth Commission (TYC) for an indeterminate period. By a single issue, he contends the
trial court abused its discretion because the evidence was insufficient to establish that his
parents could not provide the level of care and support needed to meet the conditions of
probation and that reasonable efforts had been made to prevent the need to remove him
from the home. We affirm.

 M.L.B. engaged in delinquent conduct involving his twelve-year-old niece. After
stipulating to the State's evidence, M.L.B. was adjudicated for aggravated sexual assault,
a first degree felony, and indecency with a child, a second degree felony. At the disposition
hearing, the court heard testimony from Reba Moore, the chief juvenile probation officer. 
 Moore testified to information obtained from a sex offender assessment administered to
M.L.B. by Dr. Beth Shapiro, a licensed sex offender therapist. Doctor Shapiro's report was
admitted into evidence without objection. Based on the report and the available placement
options, Moore recommended that rehabilitation at a TYC facility would be in M.L.B.'s best
interest and in the best interest of society. M.L.B.'s mother and uncle testified that he had
not been in trouble at school or with the law prior to this incident. 

 At the conclusion of the evidence, the court issued an order pursuant to section
54.04(d)(2) of the Family Code committing M.L.B. to a TYC facility for an indeterminate
period. In addition to the adjudicated offenses, the order listed the following reasons for
the TYC placement:

 (1) the said Juvenile-Respondent cannot be controlled or disciplined by either
parent;

 (2) it is in the best interest of the Juvenile-Respondent and for the protection
of the community . . . .


 Despite these reasons, M.L.B. contends the trial court abused its discretion because
there was no evidence to support the findings required by sections 54.04(c) and 54.04(i)
of the Family Code. We disagree.

 Following an adjudication, a juvenile court has broad discretion to determine
disposition. In re C.J.H., 79 S.W.3d 698, 702 (Tex.App.-Fort Worth 2002, no pet.). In
reviewing a court's decision, we will not reverse a disposition unless the court abused its
discretion. Id. Abuse of discretion is determined by whether the court acted without
reference to any guiding rules or principles. Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241-42 (Tex. 1985). The mere fact that a trial judge may decide a matter
within his discretionary authority in a different manner than an appellate judge does not
demonstrate that an abuse of discretion has occurred. Id. 

 By his issue, M.L.B. contends the State's evidence is insufficient. However, the
substance of his argument is a challenge to the legal sufficiency of the evidence. In
determining whether the evidence is sufficient to support the disposition ordered, we apply
a civil standard of review. In re J.P.R., 95 S.W.3d 729, 731 (Tex.App.-Amarillo 2003, no
pet.). Therefore, when evaluating a "no evidence" legal sufficiency challenge, we review
the entire record for any probative evidence which, when viewed in its most favorable light,
supports the adverse finding. Lee Lewis Constr., Inc. v. Harrison, 70 S.W. 3d 778, 782
(Tex. 2001); Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co., 766 S.W.2d 264, 276
(Tex.App.-Amarillo 1988, writ denied). We disregard all evidence and inferences to the
contrary. Lenz v. Lenz, 79 S.W.3d 10, 19 (Tex. 2002). If there is more than a scintilla of
probative evidence to support the finding, we must uphold the judgment. Id.

 Section 54.04(c) of the Family Code provides that no disposition placing the child
outside of the home may be made unless a court finds "that the child, in the child's home,
cannot be provided the quality of care and level of support and supervision that the child
needs to meet the conditions of the probation." Tex. Fam. Code Ann. § 54.04(c) (Vernon
Supp. 2005). Similarly, if a court commits the child to TYC, section 54.04(i) requires that
it include in its disposition order the following determinations:

 (A) [I]t is in the child's best interests to be placed outside the child's home; 

 

 (B) reasonable efforts were made to prevent or eliminate the need for the
child's removal from the home and to make it possible for the child to return
to the child's home; and


 (C) the child, in the child's home, cannot be provided the quality of care and
level of support and supervision that the child needs to meet the conditions
of probation.


Id. 

 At the disposition hearing, a court "may consider written reports from probation
officers . . . or professional consultants in addition to the testimony of witnesses." Id. at (b).
Regarding the disposition in the present case, the court relied on the sex offender
assessment summarized in Dr. Shapiro's report and the testimony of probation officer Reba
Moore. Doctor Shapiro indicates in her report that M.L.B. admits committing the offense
but shows a lack of empathy for the victim and is developing a "deviant pattern of sexual
arousal." She recommends M.L.B. receive intensive sex offender treatment to deal with
his sexual behavioral problems and recommends participation in treatment and support
groups. Based on her assessment, Dr. Shapiro concludes there is a risk M.L.B. will
reoffend unless he is placed in a secure facility where he can receive sex offender therapy. 

 In addition to Dr. Shapiro's report, Moore testified that a TYC commitment would be
necessary to protect the victim and other children in the family and that TYC was the only
secured facility in the court's jurisdiction with a sex offender therapy program. When
questioned specifically regarding the quality of care and level of support in the home,
Moore stated that, due to the closeness of the family and lack of supervision, the family
interactions "might not protect the victim." She also stated her opinion that removal of
M.L.B. from the home would be necessary for the healing of the family. Considering the
evidence presented at the disposition hearing in a light favorable to the judgment, we
conclude there is more than a scintilla of probative evidence to support the findings
required by sections 54.04(c) and 54.04(i). M.L.B.'s issue is overruled.

 Accordingly, the trial court's order of disposition is affirmed.

 Don H. Reavis

 Justice



troleum
solution in the pasture where Meyer's cows were located is undisputed. Meyer testified
that 100 per cent of his cows delivered calves the first year he owned them and they were
bred to start calving March 1, 2001, or thereafter. Also, he testified that after he saw the
cows licking and smelling the oil at the leak site, one cow aborted her calf the next day and
that over a period of time, 30 cows aborted or had dead calves and the next year, 17 of 39
remaining cows were barren or had calves that died. Meyer also testified that, in his
opinion, the calving problem was caused by the cows ingesting the oil or other liquid at the
leak site and he did not know of any other reason that could have caused the calving
problems. (4) Doctor Skaggs, DVM and another veterinarian testified that, among other
possible known factors, drinking oil can cause cows to abort their calves.

 Reviewing this evidence in light of the circumstantial evidence instruction and
considering the evidence favorable to the verdict only, an inference of causation is
presented by the objective facts. Duke argues that expert testimony is necessary to
establish causation unless general experience and common sense will enable a layman to
fairly determine the causal relationship between the occurrence and the injury. Because
Duke did not object to the testimony of Meyer, and this contention was not otherwise
presented to the trial court, it may not be considered for the first time on appeal. State of
Cal. Dept. of Mental Hygiene v. Bank of the S.W. Nat. Ass'n, 163 Tex. 314, 354 S.W.2d
576, 581 (1962). Then, citing E. I. du Pont de Nemours and Co., Inc. v. Robinson, 923
S.W.2d 549, 556 (Tex. 1995), Duke, however, argues the evidence is not sufficiently
relevant and reliable to meet the requirements of Rule 702 of the Texas Rules of Evidence. 
However, Robinson is not controlling here because it was concerned with the admissibility
of evidence which is not at issue here. Moreover, by its failure to object to Meyer's opinion
as being unreliable, Duke waived any contention that the opinion was unreliable. See
Guadalupe-Blanco River Authority v. Kraft, 77 S.W.3d 805, 807 (Tex. 2002); Texas Dept.
of Human Services v. Green, 855 S.W.2d 136,149 (Tex.App.-Austin 1993, writ denied). 
Also, Duke's failure to request a limiting instruction regarding the causation opinion of
Meyer per Rule 105(a) of the Texas Rules of Evidence, it waived its complaint to general
admission of the evidence. Birchfield v. Texarkana Memorial Hosp., 747 S.W.2d 361, 365
(Tex. 1987). Considering only the evidence and the reasonable inferences which can be
drawn therefrom in their most favorable light to support the jury's findings and disregarding
all contrary evidence and inferences, we conclude the evidence was legally sufficient to
support the jury findings to question 2 and question 3(b). Accordingly, issue one is
overruled.

 By its second issue, Duke contends the evidence was factually insufficient to support
a finding of causation. We agree.

 Having found there is some evidence to support the findings, we now review and
consider all of the evidence to determine if the verdict is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. In addition to the evidence
mentioned above, in summary form, according to the record: 


 Although Meyer saw the cows standing at the leak site while licking
and sticking their noses in the surface, there is no evidence that the
cows actually ingested oil; or if they did, the quantity of the oil
ingested.
 Meyer guessed that five or six cows may have ingested oil but there
was no evidence identifying which cows may have ingested oil.
 Dr. Skaggs and Dr. Halliburton testified there are numerous factors
which can cause cows to abort calves, but there was no evidence
showing the quantity of oil required to cause a cow to abort her calf.
 Dr. Skaggs and Dr. Halliburton testified that numerous potential
causes of the abortions were not ruled out by testing.
 Lab results were inclusive for oil exposure. 
 Afterbirth of cows was not tested for traces of petroleum.
 Lab results of the three cows tested did not indicate oil exposure and
no oil found in stool samples.
 Dr. Skaggs testified the initial effect of oil ingestion causes cattle to
stumble and slobber and have muscle seizures and spasms; however
there was no evidence of this behavior.
 Blood test revealed the cows were low in protein and magnesium and
other minerals. Results showed poor nutrition which could have been
a factor.
 Dr. Skaggs admitted that based on the lab results, oil exposure would
be impossible to prove.
 Dr. Halliburton concluded that to a reasonable veterinary certainty, he
could not testify it was more likely than not the Meyer's cows aborted
calves or died due to the oil ingestion.



 Hinkle was not required to establish causation by a scientific certainty or exclude 
every other possibility. Purina Mills, 948 S.W.2d at 936. However, because the evidence
suggests that several conditions or events could have caused the cows to abort their calves
and where, as here, circumstances are consistent with either of two or more facts and
nothing shows that one is more probable than the other, neither fact may be inferred. See
Roth v. FFP Operating Partners, L.P., 994 S.W.2d 190, 197 (Tex.App.- Amarillo 1999, pet.
denied). Considering all of the evidence as a whole, we find the evidence factually
insufficient to support a finding that in reasonable probability the ingestion of the oil by the
cows caused injuries to them. Accordingly, Duke's second issue is sustained.

 Having sustained Duke's second issue and concluded that the judgment of the trial
court must be reversed and the cause remanded, we do not address the remaining issues
and cross-points because further review is unnecessary, Tex. R. App. P. 47.1, and could
amount to an advisory opinion. Valley Baptist Medical Center v. Gonzalez, 33 S.W.3d 821,
822 (Tex. 2000). 

 Accordingly, we affirm that part of the judgment that Eddith M. Hinkle recover the
sum of $1,000 for damages to her land and related attorney's fees in the amount of $3,186
from Duke; otherwise, in all other respects, the judgment is reversed and the cause is
remanded to the trial court for further proceedings.


 Don H. Reavis

 Justice
1. The judgment signed July 28, 2004, did not make any award to Glendell Meyer or
Rose Marie Meyer.
2. At the time of trial, Duke was the assignee of record of the May 21, 1970 easement. 

3. Cf. Purina Mills, Inc. v. Odell, 948 S.W.2d 927, 936 (Tex.App.-Texarkana 1997, writ
denied); Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995).
4. Duke did not present any objection grounded on Texas Rules of Evidence 701, 702,
or otherwise.