**Opinion issued May 24, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00844-CV

———————————

**NEIGHBORHOOD CENTERS INC., Appellant and Cross-Appellee**

**V.**

**DOREATHA WALKER, Appellee and Cross-Appellant**

———————————

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Case No. 2014-37034**

———————————

## OPINION ON REHEARING

Appellant and cross-appellee, Neighborhood Centers Inc. ("Neighborhood Centers"), moved for rehearing, asking that we address the effect of amendments to the Texas Education Code that became effective after oral argument in this case

but before we issued our July 30, 2015 opinion. We grant the motion for rehearing, withdraw our previous opinion and judgment, and issue this opinion and judgment in their stead.

Appellee and cross-appellant Doreatha Walker sued her former employer, Neighborhood Centers, for its alleged retaliation against her for filing a workers' compensation claim.[1] She also sued Neighborhood Centers under the Whistleblower Protection Act.[2] Neighborhood Centers filed a plea to the jurisdiction asserting that it had governmental immunity from Walker's claims. The trial court granted the plea as to Walker's workers' compensation anti-retaliation claim, and it denied the plea as to Walker's claim under the Whistleblower Protection Act.

In its sole issue on appeal, Neighborhood Centers argues that the trial court erred in denying its plea to the jurisdiction on Walker's claim under the Whistleblower Protection Act. Walker argues in her sole issue on cross-appeal that the trial court erred in granting Neighborhood Centers' plea to the jurisdiction on her workers' compensation anti-retaliation claim.

We affirm.

---

[1]  *See* TEX. LAB. CODE ANN. § 451.001 (Vernon 2015).

[2]  *See* TEX. GOV'T CODE ANN. §§ 554.001–.010 (Vernon 2012).

**Background**

Neighborhood Centers is a private, non-profit corporation that provides services—including Head Start, workforce career centers, meals and programs for seniors, immigration services, tax preparation services, and a community credit union—to low-income communities in Houston. Neighborhood Centers also operates the Promise Community School, an open-enrollment charter school established pursuant to Texas Education Code chapter 12.[3]

Neighborhood Centers hired Walker, who has a master's degree and is certified in mid-management as a school principal, for the 2013-2014 school year to work as a third-grade teacher at the Promise Community School. Walker alleged that while she was employed with Neighborhood Centers she observed health code violations and various testing irregularities, which she described as "cheating irregularities," "[s]pecial education testing irregularities," and untimely provision of Individualized Education Plans. Walker also observed health code violations and eventually filed a workers' compensation claim for health issues that she asserts were caused by the health code violations she observed at the school.

---

[3] *See* TEX. EDUC. CODE ANN. §§ 12.001–12.156 (Vernon 2012 & Supp. 2015). The Education Code provides for three classes of charters: (1) a home-rule school district charter; (2) a campus or campus program charter; or (3) an open-enrollment charter. *Id.* § 12.002 (Vernon 2012). The Promise Community School operates as an open-enrollment charter, governed by subchapter D of chapter 12.

3

Walker alleged that after she filed her workers' compensation claim Neighborhood Centers forced her to accept a demotion and reassignment as "an Interventionist and a Girl Scout Leader," and Neighborhood Centers' insurer denied her workers' compensation claim. Walker reported her observations regarding the testing violations and health code violations to the Texas Education Agency and the Texas Health Department, respectively. She asserts that once her report of these violations came to light, Neighborhood Centers terminated her employment on a pretext.

Walker filed suit against Neighborhood Centers, alleging that its actions in demoting and subsequently firing her violated Labor Code section 451.001—which prohibits retaliation against an employee for filing a workers' compensation claim—and Government Code section 554.002(a)—a provision of the Whistleblower Protection Act that prohibits a state or local governmental entity from retaliating against an employee who has reported a violation of law to an appropriate law enforcement authority.

Neighborhood Centers filed a plea to the jurisdiction, arguing that its immunity from suit and liability barred Walker's workers' compensation anti-retaliation claim. It argued that open enrollment charter schools, such as the Promise Community School, have the same immunity as a public school district. Relying on the Texas Supreme Court's opinion in *Travis Central Appraisal*

4

*District v. Norman*, 342 S.W.3d 54 (Tex. 2011), it argued that governmental immunity is not waived for retaliatory discharge claims under Labor Code chapter 451. Neighborhood Centers also argued that it is not a "political subdivision" or "local governmental entity" under the Whistleblower Protection Act, as that act defines "local governmental entity" narrowly. It asserted that all of Walker's claims must be dismissed for lack of subject-matter jurisdiction.

The trial court granted Neighborhood Centers' plea to the jurisdiction as to Walker's workers' compensation anti-retaliation claim, and it denied the plea as to Walker's claim under the Whistleblower Protection Act. Both Neighborhood Centers and Walker filed notices of appeal.

### Open-Enrollment Charter Schools

Open-enrollment charter schools, such as Promise Community School operated by Neighborhood Centers, have been a part of the Texas public school system since 1995. *LTTS Charter Sch., Inc. v. C2 Constr., Inc.*, 342 S.W.3d 73, 74 (Tex. 2011). As the supreme court stated,

> These nontraditional public schools, created and governed by Chapter 12 of the Education Code, receive government funding and comply with the state's testing and accountability system, but they operate with greater flexibility than traditional public schools, in hopes of spurring innovation and improving student achievement.

*Id.*; *see also* TEX. EDUC. CODE ANN. § 12.001 (Vernon 2012) (describing purposes behind charter schools).

5

The Education Code unequivocally provides that "[a]n open-enrollment charter school is part of the public school system of this state." TEX. EDUC. CODE ANN. § 12.105 (Vernon 2012); *C2 Constr., Inc.*, 342 S.W.3d at 76. An open-enrollment charter school is a publicly funded institution. TEX. EDUC. CODE ANN. § 12.106 (Vernon 2012); *C2 Constr., Inc.*, 342 S.W.3d at 77–78. The Education Code provides generally that "an open-enrollment charter school is subject to federal and state laws and rules governing public schools and to municipal zoning ordinances governing public schools." TEX. EDUC. CODE ANN. § 12.103(a) (Vernon 2012).

The Education Code also "subjects open-enrollment charter schools to a host of statutes that govern governmental entities outside the Education Code." *C2 Constr., Inc.*, 342 S.W.3d at 78. Specifically, the Code provides that open-enrollment charter schools are also "considered to be governmental bodies for purposes of Chapters 551 and 552, Government Code [providing Open Meetings and Public Information Laws]." TEX. EDUC. CODE ANN. § 12.1051(a) (Vernon 2012). Open-enrollment charter schools are "considered to be a local government for purposes of Subtitle C, Title 6, Local Government Code, and Subchapter J, Chapter 441, Government Code [providing the laws relating to local government records]." *Id.* § 12.1052(a) (Vernon 2012). And "Section 12.1053 confers 'governmental entity' status, 'political subdivision' status, and 'local government'

6

status on open-enrollment charter schools for purposes of myriad public purchasing and contracting laws. . . ." *C2 Constr., Inc.*, 342 S.W.3d at 77 (citing TEX. EDUC. CODE ANN. § 12.1053 (Vernon Supp. 2014)); *see also* TEX. EDUC. CODE ANN. §§ 12.1054, 12.1055 (Vernon 2012 & Supp. 2015) (providing for applicability of law relating to conflicts of interest and nepotism laws to open-enrollment charter schools, their governing bodies, members, and officers).

Regarding an open-enrollment charter school's immunity from suit and liability, the Legislature amended Education Code section 12.1056, effective June 18, 2015,[4] to provide:

---

[4] In her response to the motion for rehearing, Walker argues in part that the Legislature's 2015 amendments to the Education Code should not be applied retroactively to her case. Generally, we presume that the Legislature intends statutes and amendments to operate prospectively unless they are expressly made retroactive. *See* TEX. GOV'T CODE ANN. § 311.022; *City of Austin v. Whittington*, 384 S.W.3d 766, 790 (Tex. 2012). However, this general rule does not apply when the statute or amendment is procedural, remedial, or jurisdictional because such statutes generally do not affect vested rights, and procedural, remedial, and jurisdictional laws should be enforced as they exist at the time the judgment is rendered. *Whittington*, 384 S.W.3d at 790; *see also Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 219 (Tex. 2002) (holding that "not all statutes that apply retroactively are constitutionally prohibited" and retroactive statute violates constitution only if, when applied, it takes away or impairs vested rights). Here, the Legislature's amendments are relevant to the jurisdiction of the court to hear the case, and application of these statutes will not take away or impair a vested right. *See Whittington*, 384 S.W.3d at 790; *Subaru of Am., Inc.*, 84 S.W.3d at 219. Accordingly, we consider the application of the Legislature's amendments that became effective prior to the issuance of our judgment in this case.

(a) In matters related to operation of an open-enrollment charter school, an open-enrollment charter school or charter holder is immune from liability and suit to the same extent as a school district. . . .

(b) An open-enrollment charter school is a governmental unit as defined by Section 101.001, Civil Practice and Remedies Code, and is subject to liability only as provided by Chapter 101, Civil Practice and Remedies Code, and only in the manner that liability is provided by that chapter for a school district.

Act of June 1, 2015, 84th Leg., R.S., ch. 922 (H.B. 1171), § 1, eff. June 18, 2015 (codified as TEX. EDUC. CODE § 12.1056).[5]

The Legislature also added section 12.1058, entitled "Applicability of Other Laws," which provides:

(a) An open-enrollment charter school is considered to be:

(1) a local government for purposes of Chapter 791, Government Code [governing interlocal cooperation contracts];

(2) a local government for purposes of Chapter 2259, Government Code [governing self-insurance funds], except that an open-enrollment charter school may not issue public securities as provided by Section 2259.031(b), Government Code;

---

[5] Prior to its most recent amendment, section 12.1056 provided, "In matters related to operation of an open-enrollment charter school, an open-enrollment charter school is immune from liability to the same extent as a public school district. . . ." TEX. EDUC. CODE ANN. § 12.1056 (Vernon 2012). The amendment changed the language of what is now subsection (a) and added subsections (b) (discussed above), (c) (providing that open-enrollment charter school is local government as defined by Civil Practice and Remedies Code Chapter 102, governing payment of tort claims), and (d) (providing that open-enrollment charter school is local governmental entity for purposes of Local Government Code chapter 271, governing liability of local governmental entities under certain written contracts). *See* Act of June 1, 2015, 84th Leg., R.S., ch. 922 (H.B. 1171), § 1, eff. June 18, 2015 (codified as TEX. EDUC. CODE § 12.1056).

(3) a political subdivision for purposes of Chapter 172, Local Government Code [also known as the Texas Political Subdivision Employees Uniform Group Benefits Act]; and

(4) a local governmental entity for purposes of Subchapter I, Chapter 271, Local Government Code [governing adjudication of claims arising under written contracts with local governmental entities].

Act of June 1, 2015, 84th Leg., R.S., ch. 1020 (H.B. 1170), § 1, eff. June 19, 2015 (codified as TEX. EDUC. CODE § 12.1058).

Section 12.1058 also specifies that open-enrollment charter schools may elect to extend workers' compensation benefits to employees through any method available to a political subdivision under Labor Code chapter 504. *Id.* § 12.1058(b). Section 12.1058(c) then states:

(c) Notwithstanding Subsection (a) or (b), an open-enrollment charter school operated by a tax exempt entity as described by Section 12.101(a)(3) is not considered to be a political subdivision, local government, or local governmental entity unless the applicable statute specifically states that the statute applies to an open-enrollment charter school.

*Id.* § 12.1058(c).

**Standard of Review for Pleas to the Jurisdiction on Governmental Immunity**

A plea to the jurisdiction challenges the trial court's subject-matter jurisdiction to hear the case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Subject-matter jurisdiction is essential to the authority of a court to decide a case and is never presumed. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*,

9

852 S.W.2d 440, 443–44 (Tex. 1993). The plaintiff has the burden to allege facts affirmatively demonstrating that the trial court has subject-matter jurisdiction. *Id.* at 446; *see also Weir Bros., Inc. v. Longview Econ. Dev. Corp.*, 373 S.W.3d 841, 847 (Tex. App.—Dallas 2012, no pet.) ("[The plaintiff] had the burden to plead facts that affirmatively demonstrate a waiver of governmental immunity and that the court has subject matter jurisdiction.").

We review a trial court's ruling on a plea to the jurisdiction de novo. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In reviewing the ruling, an appellate court "must determine whether facts have been alleged that affirmatively demonstrate jurisdiction in the trial court." *City of Waco v. Lopez*, 259 S.W.3d 147, 150 (Tex. 2008).

When reviewing a trial court's ruling on a jurisdictional plea, "we first look to the pleadings to determine if jurisdiction is proper, construing them liberally in favor of the plaintiffs and looking to the pleader's intent," and "we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised." *City of Waco v. Kirwan*, 298 S.W.3d 618, 621–22 (Tex. 2009). We do not adjudicate the substance of the case but instead determine whether a court has the power to reach the merits of the claim. *Bland Indep. Sch. Dist.*, 34 S.W.3d at 554; *Bd. of Trs. of Galveston Wharves v. O'Rourke*, 405 S.W.3d 228, 233 (Tex. App.—Houston [1st Dist.] 2013, no pet.).

If the pleadings affirmatively negate the existence of jurisdiction, the plea may be granted without allowing the plaintiff an opportunity to amend her pleadings. *Miranda*, 133 S.W.3d at 227. If the relevant evidence is undisputed or fails to raise a fact issue as to jurisdiction, the trial court rules on the plea as a matter of law. *Id.* at 228.

"Under the common-law doctrine of sovereign immunity, the [state] cannot be sued without its consent." *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011). Governmental immunity operates like sovereign immunity to afford similar protection to subdivisions of the state, including counties, cities, and school districts. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Like sovereign immunity, "governmental immunity has two components: immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether." *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). Governmental immunity from suit deprives a trial court of subject-matter jurisdiction and is properly asserted in a plea to the jurisdiction, while immunity from liability is an affirmative defense. *See Miranda*, 133 S.W.3d at 224–26. Furthermore, "[i]mmunity from suit bars a suit against the State unless the Legislature expressly consents to the suit." *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex. 2002).

"[F]or the Legislature to waive the State's sovereign immunity, a statute or resolution must contain a clear and unambiguous expression of the Legislature's waiver of immunity." *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003); *see also Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 512 (Tex. 2012) (recognizing that immunity from suit "remains intact unless surrendered in express and unequivocal terms by the statute's clear and unambiguous waiver"). The supreme court has "repeatedly affirmed that any purported statutory waiver of sovereign immunity should be strictly construed in favor of retention of immunity." *Chatha*, 381 S.W.3d at 513 (citing *Taylor*, 106 S.W.3d at 696); *see also* TEX. GOV'T CODE ANN. § 311.034 (Vernon 2013) ("In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language.").

## Interlocutory Appeal

As a preliminary matter, Walker argues that Neighborhood Centers is a private, non-profit corporation that does not enjoy governmental immunity from suit. She contends that, for that reason, "the Court should dismiss Neighborhood Centers' issue on appeal for lack of appellate jurisdiction." We disagree with Walker's contention that we lack appellate jurisdiction over this interlocutory appeal.

Civil Practice and Remedies Code section 51.014(a)(8) provides that "[a] person may appeal from an interlocutory order of a district court . . . that . . . grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in Section 101.001."  TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (Vernon 2015).  Pursuant to the Legislature's recent amendment of Education Code section 12.1056, "[a]n open-enrollment charter school is a governmental unit as defined by Section 101.001 [of the] Civil Practice and Remedies Code. . . ." Act of June 1, 2015, 84th Leg., R.S., ch. 922 (H.B. 1171), § 1, eff. June 18, 2015 (codified as TEX. EDUC. CODE § 12.1056(b)); *see also C2 Constr., Inc.*, 342 S.W.3d at 75–76 (holding that open-enrollment charter school is governmental unit as defined in Civil Practice and Remedies Code section 101.001(3), and thus court of appeals has jurisdiction to hear interlocutory appeal from order granting or denying charter school's plea to jurisdiction pursuant to Civil Practice and Remedies Code section 51.014(a)(8)).

Accordingly, we hold that because the Education Code provides that Neighborhood Centers is a governmental unit as that term is defined in Civil Practice and Remedies Code section 101.001, this Court has jurisdiction over this interlocutory appeal under the express language of section 51.014(a)(8).  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8); *id.* § 101.001(3); Act of June 1,

2015, 84th Leg., R.S., ch. 922 (H.B. 1171), § 1, eff. June 18, 2015 (codified as TEX. EDUC. CODE § 12.1056(a)); *C2 Constr., Inc.*, 342 S.W.3d at 82.

**Plea to the Jurisdiction on Walker's Workers' Compensation Anti-Retaliation Claim**

In her sole issue on cross-appeal, Walker argues that the trial court erred in granting Neighborhood Centers' plea to the jurisdiction on her workers' compensation anti-retaliation claim under Labor Code section 451.001. *See* TEX. LABOR CODE ANN. § 451.001 (Vernon 2015).

Walker argued in her original brief on appeal that "Texas courts have not decisively afforded entities like Neighborhood Centers immunity from suit" because the Education Code only provides that open-enrollment charter schools are immune from *liability* to the same extent as public school districts and does not explicitly mention immunity from *suit.* She also argues that "[a]n entity should not obtain immunity from suit merely by operating an open-enrollment charter school" and that granting Neighborhood Centers immunity from suit because it operates an open-enrollment charter school would not serve the purposes of governmental immunity.

Neighborhood Centers responds that numerous courts of appeals, including this Court, have held that charter schools enjoy the same immunity from suit as traditional public school districts. It further argues that, because the Texas Supreme Court has held that governmental immunity has not been waived for

14

claims under the Workers' Compensation Act's anti-retaliation provision set out in Labor Code section 451.001, the trial court lacked jurisdiction over this claim of Walker's.

As set out above, the Legislature has effectively settled the issue of whether an open-enrollment charter school is immune from suit to the same extent as a public school by amending Education Code section 12.1056. Effective June 18, 2015, "[i]n matters related to operation of an open-enrollment charter school, an open-enrollment charter school *or charter holder* is immune from liability *and suit* to the same extent as a school district. . . ." Act of June 1, 2015, 84th Leg., R.S., ch. 922 (H.B. 1171), § 1, eff. June 18, 2015 (codified as TEX. EDUC. CODE § 12.1056(a)) (emphasis added); *see also C2 Constr., Inc.*, 342 S.W.3d at 82 (holding that open-enrollment charter school is governmental unit for purposes of Tort Claims Act in Civil Practice and Remedies Code chapter 101); *LTTS Charter Sch., Inc. v. C2 Constr., Inc.*, 358 S.W.3d 725, 735–36 (Tex. App.—Dallas 2011, pet. denied) (holding that open-enrollment charter school was immune from suit on plaintiff's contract claim just as public school would be).

Here, Walker sued Neighborhood Centers, a charter holder, for its actions related to operating its open-enrollment charter school. We conclude that governmental immunity from suit applies to Neighborhood Centers in this case, and the trial court lacks subject-matter jurisdiction absent a clear and unambiguous

15

waiver of that immunity by the Legislature. *See Tooke*, 197 S.W.3d at 332–33; *Miranda*, 133 S.W.3d at 224–26; *see also City of Dallas v. Albert*, 354 S.W.3d 368, 374 (Tex. 2011) (holding that waivers of sovereign immunity or consent to sue governmental entities must generally be found in actions of Legislature). We therefore turn to whether Neighborhood Centers' immunity from suit has been waived for a workers' compensation anti-retaliation claim brought pursuant to Labor Code chapter 451.

In *Travis Central Appraisal District v. Norman*, the Texas Supreme Court addressed the issue of waiver of governmental immunity under the same statute Walker relies upon in her pleadings—"the Texas Anti-Retaliation Law, found in Chapter 451 of the Texas Labor Code, [which] prohibits a person from discharging or discriminating against an employee, who in good faith files a workers' compensation claim." 342 S.W.3d 54, 54 (Tex. 2011) (citing TEX. LAB. CODE ANN. § 451.001(1)). The court acknowledged that it had previously held that, while the anti-retaliation statute itself did not waive governmental immunity, the 1981 and 1989 versions of Labor Code chapter 504, also known as the Political Subdivisions Law, reflected a legislative intent to waive governmental immunity for retaliatory discharge claims under chapter 451. *Id.* at 56–57 (citing *City of LaPorte v. Barfield*, 898 S.W.2d 288, 298–99 (Tex. 1995) (holding that chapter

16

504 waives governmental immunity of political subdivisions for retaliatory discharge claims under chapter 451)).

However, the supreme court in *Norman* also observed that, following the 2005 revisions to the Political Subdivisions Law, the statute no longer contained a clear and unambiguous waiver of immunity from suit under the anti-retaliation provision. *Id.* at 57–59. The court concluded, "Because a retaliatory discharge claim may not be brought against the government without its consent and the Political Subdivisions Law no longer provides such consent by waiving the government's immunity, the underlying claim in this case must be dismissed." *Id.* at 59.

Following the supreme court's reasoning in *Norman*, we conclude that the Legislature has not provided a clear and unambiguous waiver of Neighborhood Centers' governmental immunity from suit on Walker's anti-retaliation claim. *See id.* Accordingly, the trial court lacked subject-matter jurisdiction over this claim and properly granted Neighborhood Centers' plea to the jurisdiction on this claim. *See Tooke*, 197 S.W.3d at 332–33; *Miranda*, 133 S.W.3d at 224–26.

We hold that Neighborhood Centers enjoys immunity from Walker's suit under the anti-retaliation provision of the Workers' Compensation Act in Labor Code chapter 451 and that the immunity of political subdivisions to suit under this chapter has not been clearly and unambiguously waived.

17

We overrule Walker's sole issue on appeal.

**Plea to the Jurisdiction on Walker's Whistleblower Protection Act Retaliation Claim**

In its sole issue on appeal, Neighborhood Centers argues that the trial court erred in denying its plea to the jurisdiction on Walker's retaliation claim under the Whistleblower Protection Act. It argues that, as a public charter school, it is not subject to the Whistleblower Protection Act and, accordingly, Walker cannot allege any waiver of its governmental immunity from suit under that statute.

Neighborhood Centers acknowledges that the supreme court has held that open-enrollment charter schools are "governmental units" under the Texas Tort Claims Act. *See C2 Constr. Inc.*, 342 S.W.3d at 82. However, it argues that the definition of "governmental unit" in the Tort Claims Act is broader than the definition of "local governmental entity" in the Whistleblower Protection Act. It argues that it is not a "political subdivision of the state" within the meaning of the Whistleblower Protection Act because it does not have the characteristics of a state governing board or of a traditional political subdivision of the state, such as the power to assess and collect taxes, a governing body that is either elected in local elections or appointed by locally-elected officials, or jurisdiction over a portion of the state. *See Guar. Petroleum Corp. v. Armstrong*, 609 S.W.2d 529, 531 (Tex. 1980) (providing characteristics that "political subdivisions" possess). Neighborhood Centers' argument thus turns on whether an entity operating an

18

open-enrollment charter school falls within the definition of "local governmental entity" in the Whistleblower Protection Act such that its immunity from suit is waived for anti-retaliation claims filed under the Act.

On rehearing, Neighborhood Centers argues that the Legislature's adoption of Education Code section 12.1058 "makes clear that Neighborhood Centers is not subject to the Whistleblower Act; and therefore, there has been no waiver of immunity."

## A. Waiver of Immunity from Suit Under the Whistleblower Protection Act and Education Code

Neighborhood Centers argues that newly added section 12.1058(c) must be construed to preclude the treatment of charter schools like public schools for purposes of the Whistleblower Protection Act because that subsection states that a charter school "is not considered to be a political subdivision, local government, or local governmental entity unless the applicable statute specifically states that the statute applies to an open-enrollment charter school." It argues that the Whistleblower Protection Act does not specifically state that the Act applies to charter schools; therefore, Neighborhood Centers does not fall within the definition of a local governmental entity as defined by the Whistleblower Protection Act. We disagree.

19

## 1.     *Waiver of Immunity Under the Whistleblower Protection Act*

The Whistleblower Protection Act, in Government Code section 554.002, prohibits retaliation for reporting a violation of law:

> A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority.

TEX. GOV'T CODE ANN. § 554.002(a) (Vernon 2012).  In section 554.001, the Whistleblower Protection Act defines "local governmental entity" as used in section 554.002 to mean "a political subdivision of the state, including a: (A) county; (B) municipality; (C) public school district; or (D) special-purpose district or authority."  *Id.* § 554.001(2) (Vernon 2012).

"A public employee whose employment is suspended or terminated or who is subjected to an adverse personnel action in violation of Section 554.002 is entitled to sue for: (1) injunctive relief; (2) actual damages; (3) court costs; and (4) reasonable attorney fees."  *Id.* § 554.003(a) (Vernon 2012).  The term "public employee" is defined for this purpose to mean "an employee or appointed officer other than an independent contractor who is paid to perform services for a state or local governmental entity."  *Id.* § 554.001(4).

The Whistleblower Protection Act also contains a waiver of immunity:

> A public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by

20

this chapter. Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter.

*Id.* § 554.0035 (Vernon 2012). We conclude, therefore, that the Whistleblower Protection Act waives the immunity of local government entities, including public school districts, from suits brought by whistleblowers.

### 2. *Waiver of Immunity Under the Education Code*

The Education Code, in turn, unequivocally provides that "[a]n open-enrollment charter school is part of the public school system of this state." TEX. EDUC. CODE ANN. § 12.105; *C2 Constr., Inc.*, 342 S.W.3d at 76. The Education Code further provides that "an open-enrollment charter school is subject to federal and state laws and rules governing public schools and to municipal zoning ordinances governing public schools." TEX. EDUC. CODE ANN. § 12.103(a). In addition, regarding immunity, the Education Code, as amended in 2015, now specifically provides, "In matters related to operation of an open-enrollment charter school, an open-enrollment charter school or charter holder is immune from liability and suit to the same extent as a school district. . . ." Act of June 1, 2015, 84th Leg., R.S., ch. 922 (H.B. 1171), § 1, eff. June 18, 2015 (codified as TEX. EDUC. CODE § 12.1056(a)).

The Education Code also "subjects open-enrollment charter schools to a host of statutes that govern governmental entities outside the Education Code." *C2*

21

*Constr., Inc.*, 342 S.W.3d at 78. The Code provides that open-enrollment charter schools are: (1) "governmental bodies" for purposes of Open Meetings and Public Information Laws; (2) a "local government" under laws relating to local government records; and (3) a "governmental entity," "political subdivision," and "local government" for purposes of public purchasing and contracting laws. *See* TEX. EDUC. CODE ANN. §§ 12.1051–12.1055; *C2 Constr. Inc.*, 342 S.W.3d at 77; *see also* TEX. EDUC. CODE ANN. § 12.1054–12.1055 (providing for applicability of law relating to conflicts of interest and nepotism laws to open-enrollment charter schools, their governing bodies, members, and officers).

Newly enacted Education Code sections 12.1058(a) and (b) add to this list of specific provisions for which open-enrollment charter schools may be considered governmental entities. *See* Act of June 1, 2015, 84th Leg., R.S., ch. 1020 (H.B. 1170), § 1, eff. June 19, 2015 (codified as TEX. EDUC. CODE § 12.1058(a)–(b)) (providing that open-enrollment charter schools can be "a local government" for purposes of statutes governing inter-local cooperation contracts and self-insurance funds under Government Code chapters 791 and 2259; "a political subdivision" for purposes of Texas Political Subdivision Employees Uniform Group Benefits Act under Local Government Code chapter 172; "a local governmental entity" for purposes of adjudication of claims arising under written contracts with local governmental entities under Local Government Code chapter 271; and "a political

22

subdivision" under Labor Code chapter 504 governing workers' compensation participation). New section 12.1056(d) also provides that an open-enrollment charter school is a local government entity for purposes of Local Government Code chapter 271. *See* Act of June 1, 2015, 84th Leg., R.S., ch. 922 (H.B. 1171), § 1, eff. June 18, 2015 (codified as TEX. EDUC. CODE § 12.1056(d)). And section 12.1056(b) provides that an open-enrollment charter school is a governmental unit as defined in Civil Practice and Remedies Code section 101.001, governing tort claims against governmental entities. Act of June 1, 2015, 84th Leg., R.S., ch. 922 (H.B. 1171), § 1, eff. June 18, 2015 (codified as TEX. EDUC. CODE § 12.1056(b)).

Finally, newly enacted section 12.1058(c) provides a limit to the application of other provisions to open-enrollment charter schools, stating, "Notwithstanding Subsection (a) or (b), an open-enrollment charter school operated by a tax exempt entity as described by Section 12.101(a)(3) is not considered to be a political subdivision, local government, or local governmental entity unless the applicable statute specifically states that the statute applies to an open-enrollment charter school." Act of June 1, 2015, 84th Leg., R.S., ch. 1020 (H.B. 1170), § 1, eff. June 19, 2015 (codified as TEX. EDUC. CODE § 12.1058(c)).

The newly enacted amendments in sections 12.1056(b) and 12.1058(a) and (b) add to the provisions in law for which charter schools are to be considered public entities, and section 12.1058(c) limits the courts' extension of the purposes

23

for which charter schools are considered to be local government entities, but they do not affect or in any way alter the express immunity provision, set out in section 12.1056(a) of the Code, enacted at the same time, which provides that "[i]n matters related to operation of an open-enrollment charter school, an open-enrollment charter school or charter holder is immune from liability and suit to the same extent as a school district." TEX. EDUC. CODE ANN. § 12.1056(a). Nor do these amendments affect the clear waiver of immunity for local government entities, expressly including school districts, set out in the Whistleblower Protection Act, which provides that "[a] public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chapter" and that "[s]overeign immunity is waived . . . for a violation of this chapter." TEX. GOV'T CODE ANN. § 554.0035; *see also* §§ 554.001(2), (4), 554.002(a), 554.003(a).

We hold that Neighborhood Centers' immunity from Walker's suit against it under the Whistleblower Protection Act is expressly waived by the Whistleblower Protection Act and the Education Code.

This conclusion is supported by the principles of statutory construction.

**B.      Application of the Whistleblower Protection Act to an Open-Enrollment Charter School Under the Principles of Statutory Construction**

The Texas Code Construction Act provides that, "[i]n enacting a statute, it is presumed that . . . (2) the entire statute is intended to be effective [and] (3) a just

and reasonable result is intended." TEX. GOV'T CODE ANN. § 311.021 (2), (3) (Vernon 2013). The Act further provides that, "[i]n construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the (1) object sought to be attained; (2) circumstances under which the statute was enacted; (3) legislative history; (4) common law or former statutory provisions, including laws on the same or similar subjects; [and] (5) consequences of a particular construction." *Id.* § 311.023(1)–(5). The primary objective in statutory construction is to give effect to the legislators' intent. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). We rely upon the plain meaning of the statutory text unless a different meaning is supplied by legislative definition or is apparent from the context or a construction leads to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008).

Texas law holds that before the courts construe amended statutes to make substantive changes to prior statutes or to common law rules, they must look carefully to be sure that was what the Legislature intended. *Energy Serv. Co. of Bowie, Inc. v. Superior Snubbing Servs., Inc.*, 236 S.W.3d 190, 193–94 (Tex. 2007). "The Legislature has directed that '[i]n interpreting a statute a court shall diligently attempt to ascertain legislative intent and shall consider at all times the old law, the evil, and the remedy.'" *Id.* at 194 (quoting TEX. GOV'T CODE ANN. § 312.005 (Vernon 2013)). Furthermore, "[a]bsent any identifiable reason for a

substantive change to have been made in the statutory provision, or any extra-textual indication that one was intended, or any resulting change in industry practice, ... the most reasonable construction of [the statute] is the same as its pre-[textual-change] predecessors." *Id.* at 195 (construing Texas Labor Code section 417.004).

The Whistleblower Protection Act expressly states that the Act applies to public school districts. *See* TEX. GOV'T CODE ANN. § 554.002(a) (providing that "[a] state or local governmental entity" may not retaliate against employee who reports violation in good faith to proper authority); *id.* § 554.001(2) (including "public school district" in definition of "local governmental entity"). And the Education Code expressly provides that "an open-enrollment charter school is subject to federal and state laws and rules governing public schools. . . ." *See* TEX. EDUC. CODE ANN. § 12.103(a). Furthermore, the Whistleblower Protection Act contains an express waiver of immunity that applies to public schools. *See* TEX. GOV'T CODE ANN. § 554.0035. And as provided for by the Legislature's recent amendment of Education Code section 12.1056, governing immunity of open-enrollment charter schools, open-enrollment charter schools are immune from liability and suit to the same extent as public schools. *See* Act of June 1, 2015, 84th Leg., R.S., ch. 922 (H.B. 1171), § 1, eff. June 18, 2015 (codified as TEX. EDUC. CODE § 12.1056(a)).

We conclude that the Legislature has clearly expressed its intention that the Whistleblower Protection Act apply to open-enrollment charter schools just as it applies to public schools. *See Shumake*, 199 S.W.3d at 284 (primary objective in statutory construction is to give effect to legislators' intent); *Hughes*, 246 S.W.3d at 625–26 (in determining legislative intent, we rely upon plain meaning of statutory text).

The Legislature's addition of section 12.1058(c) to the Education Code does not change this analysis. That section provides only that "an open-enrollment charter school . . . is not considered to be a political subdivision, local government, or local governmental entity unless the applicable statute specifically states that the statute applies to an open-enrollment charter school." TEX. EDUC. CODE ANN. § 12.058(c). The Whistleblower Protection Act specifically states that public schools are local government entities subject to the Act, and Education Code section 12.1056(a) specifically states that open-enrollment charter schools are "immune from liability and suit to the same extent as public schools." *See* TEX. GOV'T CODE ANN. § 554.001; TEX. EDUC. CODE ANN. § 12.1056(a).

Section 12.1058, as a catch-all provision, does not purport to repeal or alter the general provision found in Education Code section 12.103 providing that charter schools are subject to the same laws as public schools. To read section 12.1058 in such a way would effectively negate section 12.103, which we will not

27

do. *See* TEX. GOV'T CODE ANN § 311.021(2) ("In enacting a statute, it is presumed that . . . the entire statute is intended to effective."). Moreover, such a reading would create an absurd result by requiring that every statute that applies to charter schools through the requirement that they be treated the same as public schools be retrofitted to add the words "charter schools" in addition to stating that the law as applied to a public school applies also to a charter school. *See id.* § 311.021(3) (in construing statute, "a just and reasonable result is intended"); *Hughes*, 246 S.W.3d at 625–26 (stating that we rely upon plain meaning of statutory text unless different meaning is supplied by legislative definition or is apparent from context, or construction leads to absurd results).

We turn, therefore, to the courts' construction of the law prior to the enactment of section 12.1058.

In *Pegasus School of Liberal Arts & Sciences v. Ball-Lowder*, the Dallas Court of Appeals addressed arguments similar to those raised by Neighborhood Centers. That court held that, in spite of the differences in the statutory definitions of "governmental unit" in the Tort Claims Act and "local governmental entity" in the Whistleblower Protection Act, "the Whistleblower Protection Act's definition of 'local governmental entity' must be interpreted to include an open-enrollment charter school." *Pegasus Sch. of Liberal Arts & Scis. v. Ball-Lowder*, No. 05-13-00482-CV, 2013 WL 6063834, at *5 (Tex. App.—Dallas Nov. 18, 2013, pet.

28

denied).  The court in *Pegasus School* held that a private, non-profit entity operating an open-enrollment charter school, such as Neighborhood Centers here, is subject to the Whistleblower Protection Act and to its waiver of immunity from suit under that Act.  *See id.*

Neighborhood Centers argues, however, that we should not rely on the Dallas Court of Appeals' opinion in *Pegasus School*.  It argues that the *Pegasus School* opinion strays from the established precedent of the supreme court in *C2 Construction*; that it erroneously applies the broad definition of "governmental unit" to the more narrowly defined term of "local governmental entity"; and that it confuses two distinct issues: "(1) the extent of an open-enrollment charter school's immunity, and (2) the basic applicability of a law and statutory cause of action to open-enrollment charter schools."  We disagree for the reasons set out below.

In reaching its conclusion in *Pegasus School*, the Dallas Court of Appeals began by discussing both the supreme court's opinion in *C2 Construction* and its own opinion in that case on remand from the Texas Supreme Court. *Id.* at *3–5.

In *C2 Construction*, the supreme court's analysis involved the "broad," "catch-all" provision in the Tort Claims Act, found in Civil Practice and Remedies Code section 101.001(3)(D), and it concluded that an open-enrollment charter school is a "governmental unit" as defined in that chapter. TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(D); *C2 Constr., Inc.*, 342 S.W.3d at 76.

29

After the supreme court remanded the case for consideration of the trial court's interlocutory order on the charter school's plea to the jurisdiction, the Dallas court in *C2 Construction* considered the question of whether the charter school's immunity had been waived by Local Government Code section 271.152, which provides a waiver of immunity for limited breach of contract claims. 358 S.W.3d at 740–42 (opinion on remand). It concluded that an open-enrollment charter school is a "local governmental entity" for purposes of the waiver of immunity in Local Government Code section 271.152. *Id.* at 742. Noting that Education Code section 12.103 specifies that "an open-enrollment charter school is subject to federal and state laws and rules governing public schools," it reasoned that the waiver of immunity from contract claims against public schools must also extend to open-enrollment charter schools. *Id.* at 741 (citing *C2 Constr., Inc.*, 342 S.W.3d at 78 n.44). The Texas Legislature has now definitively resolved this issue exactly as the *C2 Construction* court did, by expressly providing in newly added section 12.1056(b) that an open-enrollment charter school is a governmental unit as defined in Civil Practice and Remedies Code section 101.001, governing tort claims against governmental entities, just as the *C2 Construction* court held. *See* Act of June 1, 2015, 84th Leg., R.S., ch. 922 (H.B. 1171), § 1, eff. June 18, 2015 (codified as TEX. EDUC. CODE § 12.1056(b)).

Against the backdrop of the history of the *C2 Construction* cases, the Dallas court in *Pegasus School* turned to the question of whether an open-enrollment charter school is a "local governmental entity" under the Whistleblower Protection Act—the same question we must answer here.

The *Pegasus School* court stated that the Whistleblower Protection Act and Local Government Code section 271.151(3) contain "almost identical" provisions. 2013 WL 6063834, at *5; *compare* TEX. GOV'T CODE ANN. § 554.001(2)(c) (Whistleblower Protection Act) ("'Local governmental entity' means a political subdivision of the state, including a . . . public school district."), *with* TEX. LOC. GOV'T CODE ANN. § 271.151(3) (Vernon Supp. 2015) ("'Local governmental entity' means a political subdivision of this state . . . including a . . . public school district."). The court held that "[t]he 'attributes and circumstances'" of open-enrollment charter schools relied on in the *C2 Construction* cases—i.e., that they are part of the public school system, have "responsibility for implementing [the] state's school system of public education, and are subject to state laws and rules governing public schools, among other factors"—are equally relevant and applicable in determining whether an open-enrollment charter school is a "local governmental entity" under the Whistleblower Protection Act. *Pegasus School*, 2013 WL 6063834, at *5 (citing *C2 Constr., Inc.*, 358 S.W.3d at 736–37, 741 (opinion on remand)). The *Pegasus School* court held that the logic of its opinion

on remand in *C2 Construction* likewise compelled its holding that an open-enrollment charter school was a "local governmental entity" under the Whistleblower Protection Act. *Id.*

The conclusions of the Dallas Court of Appeals in *C2 Construction* and in *Pegasus School* are both consistent with the intent of the Legislature as expressed in the Whistleblower Protection Act, the previously existing sections of the Education Code, and the newly enacted sections. The Education Code grants open-enrollment charter schools "status as 'part of the public school system of this state'" and "authority to wield 'the powers granted to [traditional public] schools,'" including the power "to receive and spend state tax dollars (and in many ways to function as a governmental entity)." *C2 Constr. Inc.*, 342 S.W.3d at 78 (citing TEX. EDUC. CODE ANN. §§ 12.104–12.106). Moreover, the Education Code expressly provides that "an open-enrollment charter school is subject to federal and state laws and rules governing public schools," and it waives an open-enrollment charter school's immunity from liability and suit "to the same extent as a public school." *Id.* §§ 12.103(a), (b), 12.1056(a).

The Whistleblower Protection Act contains a "clear and unambiguous expression of the Legislature's waiver of immunity" that expressly applies to public schools, as required to waive governmental immunity. *See Taylor*, 106 S.W.3d at 696; *see also* TEX. GOV'T CODE ANN. § 554.0035 (providing that public

32

employee "may sue the employing state or local governmental entity" and that "[s]overeign immunity is waived and abolished to the extent of liability for the relief allowed" under Act). Thus, there is no question that the Legislature intended to waive immunity from suit for some claims under the Whistleblower Protection Act. There is only the question of whether the scope of affected governmental entities includes open-enrollment charter schools.

We conclude that the Whistleblower Protection Act applies here and that Neighborhood Centers' immunity from suit and liability is waived to the same extent that the public school district's immunity from suit and liability is waived. Thus, we hold that the Legislature has waived governmental immunity for the Whistleblower Protection Act claim asserted here by Walker against Neighborhood Centers. *See Taylor*, 106 S.W.3d at 697 (holding that statute waiving immunity need not be model of "perfect clarity" but must do so beyond doubt). Accordingly, the trial court properly denied Neighborhood Centers' plea to the jurisdiction on this issue.

We overrule Neighborhood Centers' sole issue on appeal.

**Conclusion**

We affirm the order of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Massengale.