# IN THE SUPREME COURT OF TEXAS

═══════════
No. 16-0897
═══════════


NEIGHBORHOOD CENTERS INC., PETITIONER,

v.

DOREATHA WALKER, RESPONDENT


═══════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIRST DISTRICT OF TEXAS
═══════════════════════════════════════


**Argued November 7, 2017**


CHIEF JUSTICE HECHT delivered the opinion of the Court.

JUSTICE JOHNSON filed a concurring opinion.

JUSTICE BLACKLOCK did not participate in the decision.


The Texas Whistleblower Act (the "WBA") prohibits what it defines as a "local

governmental entity", including a public school district, from retaliating against an employee for

reporting a violation of law by the employer.[1] The WBA allows the employee to sue for damages

---

[1] TEX. GOV'T CODE § 554.001(2) ("'Local governmental entity' means a political subdivision of the state, including a: (A) county; (B) municipality; (C) public school district; or (D) special-purpose district or authority."); *id.* § 554.002(a) ("A state or local governmental entity may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority.").

and other relief[2] and waives the employer's immunity "to the extent of liability for the relief allowed".[3] The Texas Charter Schools Act (the "CSA") authorizes the Commissioner of Education to grant eligible entities—usually private, tax-exempt nonprofits—charters to operate open-enrollment schools[4] as "part of the public school system of this state."[5] The question before us is whether the WBA applies to an open-enrollment charter school operated by a tax-exempt entity. The answer ultimately turns on the proper interpretation of Section 12.1058(c) of the CSA, which provides that "an open-enrollment charter school operated by a tax exempt entity . . . is not considered to be a . . . local governmental entity unless the applicable statute specifically states that the statute applies to an open-enrollment charter school."[6] Because the WBA contains no such

---

[2] *Id.* § 554.003(a) ("A public employee whose employment is suspended or terminated or who is subjected to an adverse personnel action in violation of Section 554.002 is entitled to sue for: (1) injunctive relief; (2) actual damages; (3) court costs; and (4) reasonable attorney fees."); *id.* § 554.003(b) ("In addition to relief under Subsection (a), a public employee whose employment is suspended or terminated in violation of this chapter is entitled to: (1) reinstatement to the employee's former position or an equivalent position; (2) compensation for wages lost during the period of suspension or termination; and (3) reinstatement of fringe benefits and seniority rights lost because of the suspension or termination."); *id.* § 554.003(c) (limiting recovery for "compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses" based on the size of the employer).

[3] *Id.* § 554.0035 ("A public employee who alleges a violation of this chapter may sue the employing state or local governmental entity for the relief provided by this chapter. Sovereign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter for a violation of this chapter.").

[4] TEX. EDUC. CODE § 12.101(a) ("In accordance with this subchapter, the commissioner may grant a charter on the application of an eligible entity for an open-enrollment charter school to operate in a facility of a commercial or nonprofit entity, an eligible entity, or a school district, including a home-rule school district.").

[5] *Id.* § 12.105 ("An open-enrollment charter school is part of the public school system of this state."); *see also id.* § 11.002 ("The school districts and charter schools created in accordance with the laws of this state have the primary responsibility for implementing the state's system of public education and ensuring student performance in accordance with this code.").

[6] *Id.* § 12.1058(c).

2

specific statement, we hold that it does not apply to open-enrollment charter schools and therefore reverse the judgment of the court of appeals[7] and render judgment for petitioner.

## I

Petitioner Neighborhood Centers Inc. is a private, nonprofit corporation that for more than a century has provided charitable services to low-income communities in Houston, including Head Start, workforce career centers, meals and programs for seniors, immigration services, free tax preparation services, and a community credit union.[8] Neighborhood Centers also operates Promise Community School (collectively, the "School"), an open-enrollment charter school that provides tuition-free public education to students on multiple campuses.

The School hired respondent Doreatha Walker as a third grade teacher. She had been on the job about 5 months when she complained to the principal that something in her classroom, perhaps mold, was making her and the children sick. The School refused to move the class to another room. On March 27, Walker requested paperwork to submit a workers' compensation claim alleging that on March 24 she sustained injury as a result of the uncleanliness of the room in which she taught. Walker alleges that the Neighborhood Centers Director of Human Resources instructed her not to file a claim because a "workable solution" would be found. That weekend, Walker emailed her complaint to the Houston Health Department. She also wrote to the Texas Education Agency, asserting that the School had submitted falsified test scores to the Agency before Walker arrived, had not tested special-education students properly, and had not timely prepared individualized

---

[7] 499 S.W.3d 16 (Tex. App.—Houston [1st Dist.] 2016).

[8] While this appeal has been pending, Neighborhood Centers has changed its name to BakerRipley.

education plans for students with disabilities. The following week, the School terminated Walker's employment.[9]

Walker sued the School for violating the WBA by retaliating against her.[10] The trial court denied the School's plea to the jurisdiction asserting immunity from suit, and the School appealed.[11] The court of appeals concluded that the WBA's waiver of immunity for local governmental entities, including public school districts, covers open-enrollment charter schools and also that the CSA waives immunity from suit for WBA violations.[12] The court focused on Section 12.1056(a),[13] which states that "[i]n matters related to operation of an open-enrollment charter school, an open-enrollment charter school or charter holder is immune from liability and suit to the same extent as a school district".[14] Neither this waiver nor the WBA's, the court held, was affected by Section 12.1058(c),[15] which provides that "an open-enrollment charter school operated by a tax exempt entity . . . is not considered to be a . . . local governmental entity unless the applicable statute

---

[9] The School offered evidence that Walker has sued her various employers multiple times over many years, always without success.

[10] Walker also sued the School for retaliating against her for filing a workers' compensation claim in violation of Section 451.001 of the Texas Labor Code. The court of appeals held that the School is immune from suit on this retaliation claim, 499 S.W.3d at 25, and Walker has not appealed that ruling to this Court.

[11] *See LTTS Charter Sch., Inc. v. C2 Constr., Inc.*, 342 S.W.3d 73, 74–75 (Tex. 2011) (holding that an open-enrollment charter school is a "governmental unit" under the Tort Claims Act, Chapter 101 of the Texas Government Code, and therefore authorized by Section 51.014(a)(8) of the Texas Civil Practice and Remedies Code to take an interlocutory appeal from the denial of a plea to the jurisdiction).

[12] 499 S.W.3d at 28.

[13] *Id.* at 27–29.

[14] TEX. EDUC. CODE § 12.1056(a).

[15] 499 S.W.3d at 28–30.

4

specifically states that the statute applies to an open-enrollment charter school."[16] Accordingly, the court affirmed the trial court's order.[17]

We granted the School's petition for review.[18] We begin by analyzing the WBA, then turn to the CSA and the recent amendments to it.

## II

The Legislature adopted the WBA in 1983[19] amidst a growing sense throughout the country that "mismanagement in the public sector is inherently a matter [of] public concern, and that employees who disclose mismanagement deserve legal protection."[20] So firmly was the Legislature of that view that the bill passed without debate or a dissenting vote in either house.[21] The WBA prohibited a state or local governmental body, as defined in the statute, from suspending, terminating, or discriminating against "a public employee who reports a violation of law to an appropriate law enforcement authority if the employee report is made in good faith."[22] The WBA gave public employees the right to sue for broad remedies: reinstatement, actual damages, back pay

---

[16] TEX. EDUC. CODE § 12.1058(c).

[17] 499 S.W.3d at 32.

[18] 60 Tex. Sup. Ct. J. 1659 (Sept. 22, 2017).

[19] Act of May 30, 1983, 68th Leg., R.S., ch. 832, 1983 Tex. Gen. Laws 4751.

[20] DANIEL P. WESTMAN & NANCY M. MODESITT, WHISTLEBLOWING: THE LAW OF RETALIATORY DISCHARGE 67 (Bureau of Nat'l Aff. 2d ed. 2004) ("Beginning in the 1980s and continuing steadily thereafter, 47 states and the District of Columbia have enacted whistleblower statutes that protect state or local government employees."); *see also id.* at 281–307 (collecting statutes). Federal whistleblower protections were enacted in the Civil Service Reform Act of 1978, Pub. L. No. 95-454, 92 Stat. 1111 (codified in scattered sections of 5 U.S.C.), and the Whistleblower Protection Act of 1989, Pub. L. No. 101-12, 103 Stat. 16 (codified in scattered sections of 5 U.S.C.).

[21] 1983 Tex. Gen. Laws at 4753.

[22] *Id.* § 2, 1983 Tex. Gen. Laws at 4752.

and benefits, exemplary damages, costs, and attorney fees.[23] Surprisingly, at least in retrospect, the Director of the Legislative Budget Board reported that "[n]o fiscal implication to the State or units of local government is anticipated."[24]

Six years later, George Green, an architect employed by the Texas Department of Human Services ("DHS"), reported to his superiors what he believed to be a pattern of fraud and corruption among agency procurement officers.[25] Seeing that he was ignored, he took his concerns to the House Budget Oversight Committee for Human Services.[26] DHS then began to scrutinize Green's employment history and found that he had once charged a 13¢ personal long distance call to the agency and that he had once left work for a physical therapy session he could not show he attended.[27] DHS terminated Green,[28] and believing it was for reporting possible illegal activity, he sued under the WBA.[29] The trial court rendered judgment on a verdict for Green, awarding him

---

[23] *Id.* §§ 3–4, 1983 Tex. Gen. Laws at 4752.

[24] Letter from Jim Oliver, Dir., Legislative Budget Bd., to Hon. James E. (Pete) Laney, Chair, Comm. on State Affairs, Tex. House of Representatives (Apr. 8, 1983).

[25] *Tex. Dep't of Human Servs. v. Green*, 855 S.W.2d 136, 140 (Tex. App.—Austin 1993, writ denied).

[26] *Id*. at 140, 146.

[27] *Id*. at 140.

[28] *Id.* DHS also had Green indicted on felony charges, which the district attorney later dismissed. *Id*.

[29] *Id*.

$3,459,831.87 in actual damages,[30] $10 million in punitive damages, $160,000 in attorney fees, and pre- and post-judgment interest.[31] The court of appeals affirmed.[32]

In its next regular session, the Legislature refused to appropriate the money to pay Green's judgment[33] and instead amended the WBA to eliminate recovery of exemplary damages and cap all actual damages, depending on the size of the employing entity, from $250,000 for an entity with more than 500 employees to $50,000 for an entity with fewer than 101 employees.[34] After the Legislature adjourned, the Governor and Legislative Budget Board agreed that the State would pay Green $13.7 million to settle his claim.[35] There is no record that Green's charges of fraud were ever substantiated.[36]

*Green* is an example of the consequences of governmental abuse of employees, not of ferreting out government mismanagement to protect the public. Since then, the Legislature has been more cautious in expanding protection for whistleblowers. Instead of broad statutes, it has enacted several provisions carefully drawn to cover specific interests needing protection.[37] This Court has

---

[30] The jury appears to have deducted 13¢ from Green's claim.

[31] *Green*, 855 S.W.2d at 140.

[32] *Id*. at 151.

[33] Christy Hoppe, *State Pays Fired Man Millions; Money, Apology End Whistle-Blower's Battle*, DALLAS MORNING NEWS, Nov. 16, 1995, at 1A.

[34] Act of May 25, 1995, 74th Leg., R.S., ch.721, § 3, 1995 Tex. Gen. Laws 3812, 3812–3813 (amending TEX. GOV'T CODE § 544.003).

[35] Hoppe, *supra* note 33.

[36] *See id.*

[37] *See, e.g.*, TEX. AGRIC. CODE § 125.013(b); TEX. HEALTH & SAFETY CODE §§ 161.134, 260A.014; TEX. HUM. RES. CODE § 48.257; TEX. OCC. CODE §§ 160.002–.004, 160.012, 301.352, 301.412–.413, 505.602–.603.

thrice "rejected invitations to create a common-law cause of action for all whistleblowers, noting each time that a general claim would eclipse the Legislature's decision to enact a number of narrowly-tailored whistleblower statutes instead."[38] Whistleblower protections involve interests in tension.

> There is ambivalence in the law of whistleblowing that . . . reflects the balancing of competing public policies. Prevention of harm to the public welfare is a powerful argument in favor of legal protection for whistleblowers. However, the duty of loyalty and other competing legal and ethical principles are powerful arguments in favor of limits on what, when, to whom, how, and why whistleblowers may make their disclosures. . . . [T]he legal protection of all forms of whistleblowing might detrimentally affect legitimate interests of the public, employees, and co-workers.[39]

The WBA is not universal in its application. It covers public employees—not independent contractors[40]—of state and local governmental entities. "'Local governmental entity' means a political subdivision of the state, including a: (A) county; (B) municipality; (C) public school district; or (D) special-purpose district or authority."[41] Immunity is waived for any entity against which relief is allowed.[42] In the present case, Walker argues that open-enrollment charter schools fall under (C) and not under any other provision of the WBA. Thus, the question before us is

---

[38] *Ed Rachal Found. v. D'Unger*, 207 S.W.3d 330, 331 (Tex. 2006) (per curiam) (citing *Austin v. HealthTrust, Inc.-The Hosp. Co.*, 967 S.W.2d 400, 401–402 (Tex. 1998), and *Winters v. Hous. Chron. Publ'g Co.*, 795 S.W.2d 723, 723 (Tex. 1990)); *see also Montgomery Cty. v. Park*, 246 S.W.3d 610, 612 n.1 (Tex. 2007) ("Instead of creating a general whistleblower law, the Legislature enacted several employee-specific whistleblower statutes.").

[39] WESTMAN & MODESITT, *supra* note 20 at 41.

[40] TEX. GOV'T CODE § 554.001(4) ("'Public employee' means an employee or appointed officer other than an independent contractor who is paid to perform services for a state or local governmental entity.").

[41] *Id.* § 554.001(2).

[42] *Id.* § 554.0035.

whether an open-enrollment charter school is a public school district to which the WBA applies. For the answer, we turn to the CSA.

## III

We begin with an overview of open-enrollment charter schools under the CSA, then recap the judicial interpretations of the provisions as they relate to this case, and finally examine recent amendments to the Act.

## A

The Legislature included the CSA in its 1995 overhaul of the Texas Education Code.[43] Its purposes in doing so, it has since stated, have been to "(1) improve student learning; (2) increase the choice of learning opportunities within the public school system; (3) create professional opportunities that will attract new teachers to the public school system; (4) establish a new form of accountability for public schools; and (5) encourage different and innovative learning methods."[44] State oversight of charter schools is to "ensure[] the[ir] fiscal and academic accountability" without "unduly regulat[ing] the[ir] instructional methods or pedagogical innovations".[45]

Open-enrollment charter schools are among those authorized by the CSA.[46] As their name suggests, they are generally open to the public for the instruction offered. They are tuition-free and usually operated by private, tax-exempt nonprofits under contract—the charter—with the

---

[43] Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, 1995 Tex. Gen. Laws 2207, 2244–2247 (now codified as TEX. EDUC. CODE ch. 12).

[44] TEX. EDUC. CODE § 12.001(a).

[45] *Id*. § 12.001(b).

[46] *Id*. § 12.002(3).

9

Commissioner of Education.[47] Generally, open-enrollment charter schools are "subject to federal and state laws and rules governing public schools",[48] but they are subject to the Education Code and rules adopted under it "only to the extent the applicability to an open-enrollment charter school . . . is specifically provided."[49] This gives them greater flexibility in providing education. They have "the powers granted to schools" by law[50] except the power to tax.[51] They are generally entitled to state funding[52] and services[53] as if they were a school district. Open-enrollment charter schools are "part of the public school system of [the] state."[54] In the 2015–2016 school year, 247,389 students—about 4.7 percent of public school students—were enrolled in an open-enrollment charter school.[55]

As originally enacted, the CSA provided that an open-enrollment charter school has the same immunity from liability as a school district but not the government's immunity from suit.[56] The CSA stated then, and still does, that a school's governing body "is considered a governmental body" for

---

[47] *Id*. §§ 12.101, 12.112.

[48] *Id*. § 12.103(a).

[49] *Id*. § 12.103(b).

[50] *Id*. § 12.104(a).

[51] *Id*. § 12.102(4).

[52] *Id*. § 12.106.

[53] *Id*. § 12.104(c).

[54] *Id*. § 12.105.

[55] TEX. EDUC. AGENCY, 2016 COMPREHENSIVE BIENNIAL REPORT ON TEXAS PUBLIC SCHOOLS 221 (Mar. 2017).

[56] Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 1, sec. 12.105(c), 1995 Tex. Gen. Laws 2207, 2245 ("The school is immune from liability to the same extent as a school district, and its employees and volunteers are immune from liability to the same extent as school district employees and volunteers.").

10

purposes of the Open Meetings Act and the Public Information Act.[57] Since 2001,[58] the CSA has

provided that an open-enrollment charter school is considered to be:

- a "local government" for purposes of the Local Government Records Act[59] and certain statutes pertaining to the preservation and management of local government records[60] and to government investments;[61]

- a "governmental entity" for purposes of certain statutes pertaining to government contracts[62] and to competitive bidding on public works contracts;[63] and

- a "political subdivision" for purposes of the Professional Services Procurement Act.[64]

The 2001 amendments also made laws relating to conflicts of interest,[65] nepotism,[66] and employee

retirement applicable to open-enrollment charter schools much as if they were governmental entities

and public school districts.[67]

---

[57] *Compare id.*, sec. 12.105(b), 1995 Tex. Gen. Laws at 2245, *with* TEX. EDUC. CODE § 12.1051(a) (both citing TEX. GOV'T CODE chs. 551–552).

[58] Act of May 27, 2001, 77th Leg., R.S., ch. 1504, § 6, 2001 Tex. Gen Laws 5344, 5346 (amending the CSA).

[59] TEX. EDUC. CODE § 12.1052(a) (citing TEX. LOC. GOV'T CODE ch. 201).

[60] *Id.* (citing TEX. GOV'T CODE ch. 441).

[61] *Id.* § 12.1053(b)(3) (citing TEX. GOV'T CODE §§ 2256.009–.016).

[62] *Id.* § 12.1053(b)(1)(A) (citing TEX. GOV'T CODE ch. 2252).

[63] *Id.* § 12.1053(b)(1)(B) (citing TEX. LOC. GOV'T CODE ch. 271).

[64] *Id.* § 12.1053(b)(2) (citing TEX. GOV'T CODE ch. 2254).

[65] Act of May 27, 2001, 77th Leg., R.S., ch. 1504, § 6, 2001 Tex. Gen Laws 5344, 5346–5347 (enacting TEX. EDUC. CODE § 12.1054).

[66] *Id.* at 5347 (enacting TEX. EDUC. CODE § 12.1055).

[67] *Id.* (enacting TEX. EDUC. CODE § 12.1057).

**B**

Despite these statutorily drawn similarities between open-enrollment charter schools and public school districts, the Dallas Court of Appeals concluded in *Ohnesorge v. Winfree Academy Charter School* that while open-enrollment charter schools are public schools, they simply are *not* public school *districts* as defined and constituted by law.[68] Thus, the court held, the WBA's application to public school districts does not extend to open-enrollment charter schools.[69] The court relied on its decision in *LTTS Charter School, Inc. v. C2 Construction, Inc.* [*LTTS I*] that an open-enrollment charter school is not a "governmental unit" as defined by the Texas Tort Claims Act and therefore is not entitled to an interlocutory appeal from the denial of a plea to the jurisdiction.[70]

But we disagreed with *LTTS I*.[71] The Texas Tort Claims Act's definition of "governmental unit" includes "any . . . institution, agency, or organ of government the status and authority of which are derived from . . . laws passed by the legislature".[72] Surveying the provisions of the CSA we have just set out, we concluded:

> In sum, numerous provisions of Texas law confer "status" upon and grant "authority" to open-enrollment charter schools. Their status as "part of the public school system of this state"—and their authority to wield "the powers granted to [traditional public] schools" and to receive and spend state tax dollars (and in many ways to function as a governmental entity)—derive wholly from the comprehensive

---

[68] 328 S.W.3d 654, 657 (Tex. App.—Dallas 2010, no pet.).

[69] *Id.* at 657–658.

[70] *Id*. at 657 (citing *LTTS Charter Sch., Inc. v. C2 Constr., Inc.*, 288 S.W.3d 31 (Tex. App.—Dallas 2009) [*LTTS I*], *rev'd*, 342 S.W.3d 73 (Tex. 2011) [*LTTS II*], *op. on remand*, 358 S.W.3d 725 (Tex. App.—Dallas 2011, pet. denied) [*LTTS III*]).

[71] *LTTS II*, 342 S.W.3d at 75.

[72] TEX. CIV. PRAC. & REM. CODE § 101.001(3)(D).

statutory regime described above. With this legislative backdrop in mind, we are confident that the Legislature considers [an open-enrollment charter school] to be an "institution, agency, or organ of government" under the Tort Claims Act and thus entitled to . . . an interlocutory appeal . . . .[73]

We remanded the case to the court of appeals to determine whether LTTS was immune from suit on the breach-of-contract claim C2 Construction asserted under the Local Government Contract Claims Act.[74] That court, while noting that we had expressed no view on the matter, found our reasoning inescapable. The "same attributes and circumstances" of open-enrollment charter schools described in *LTTS II*, the court of appeals wrote, equally "support a conclusion of governmental immunity."[75] "[B]ased on the supreme court's analysis", the court concluded, "open-enrollment charter schools have governmental immunity from suit."[76] Then coming full circle, the court of appeals concluded in *Pegasus School of Liberal Arts & Sciences v. Ball-Lowder* that *Ohnesorge*, which had relied on *LTTS I*, was also inconsistent with *LTTS II*, and that open-enrollment charter schools are local governmental entities for purposes of the WBA.[77]

This was the state of the case law when the present case came before the court of appeals in 2015. That court, like its sister court in *Pegasus*, found *LTTS II* controlling on the issue whether the WBA applies to open-enrollment charter schools.

**C**

---

[73] *LTTS II*, 342 S.W.3d at 78 (first alteration in original).

[74] *Id.* at 82.

[75] *LTTS III*, 358 S.W.3d at 735.

[76] *Id*. at 736.

[77] No. 05-13-00482-CV, 2013 WL 6063834, at *5 (Tex. App.—Dallas Nov. 18, 2013, pet. denied).

13

In 2015, while the appeal in this case was pending in the court of appeals, the Legislature amended CSA Section 12.1056[78] and added Section 12.1058.[79] New Sections 12.1056(b)–(d) and 12.1058(a)–(b) further expand the specific situations, set out above, in which an open-enrollment charter school is considered to be a governmental entity. The amendments made an open-enrollment charter school:

- a "governmental unit" under the Tort Claims Act and subject to the same liability under that Act as a school district;[80]

- a "local government" under statutes regarding payment of tort claims,[81] interlocal cooperation contracts,[82] and self-insurance (except for issuing public securities);[83]

- a "local governmental entity" under the Local Government Contract Claims Act and subject to the same liability as a school district;[84] and

- a "political subdivision" for purposes of the Texas Political Subdivision Employees Uniform Group Benefits Act,[85] and at the school's election, for purposes of extending workers' compensation benefits.[86]

---

[78] Act of May 29, 2015, 84th Leg., R.S., ch. 922, § 1, 2015 Tex. Gen. Laws 3187, 3187.

[79] Act of May 29, 2015, 84th Leg., R.S., ch. 1020, § 1, 2015 Tex. Gen. Laws 3574.

[80] TEX. EDUC. CODE § 12.1056(b) (citing TEX. CIV. PRAC. & REM. CODE ch. 101).

[81] *Id.* § 12.1056(c) (citing TEX. CIV. PRAC. & REM. CODE ch. 102).

[82] *Id*. § 12.1058(a)(1) (citing TEX. GOV'T CODE ch. 791).

[83] *Id*. § 12.1058(a)(2) (citing TEX. GOV'T CODE ch. 2259).

[84] *Id*. §§ 12.1056(d), 12.1058(a)(4) (both citing TEX. LOCAL GOV'T CODE ch. 271 subch. I).

[85] *Id*. § 12.1058(a)(3) (citing TEX. LOC. GOV'T CODE ch. 172).

[86] *Id*. § 12.1058(b) (citing TEX. LABOR CODE ch. 504).

The many instances in which the CSA treats open-enrollment charter schools as governmental entities and school districts might be taken to support either of two inferences. One is that the lists are merely specific affirmations of the broader principle that open-enrollment charter schools are school districts. The other is that the instances, listed specifically by the Legislature over time, are the only ones in which open-enrollment charter schools are governmental entities. The Legislature's addition of Section 12.1058(c) in the 2015 amendments resolves all doubt. That provision states that "[n]otwithstanding Subsection (a) or (b), an open-enrollment charter school operated by a tax exempt entity . . . is not considered to be a political subdivision, local government, or local governmental entity unless the applicable statute specifically states that the statute applies to an open-enrollment charter school."[87] If Subsections (a) and (b) do not indicate that open-enrollment charter schools are governmental entities and school districts generally, then neither do other CSA provisions. Subsection (c) plainly states that a statute's application to a governmental entity does not extend to an open-enrollment charter school unless the statute specifically says so.

The court of appeals considered the 2015 amendments on rehearing but concluded that they do not alter the analyses and holdings of *LTTS II*, *LTTS III*, and *Pegasus*.[88] Walker adopts the court's reasoning here.

Walker argues that reading Section 12.1058(c) to mean what it says conflicts with Section 12.1056(a), which provides that an open-enrollment charter school "is immune from liability and

---

[87] *Id.* § 12.1058(c).

[88] 499 S.W.3d 16, 29–31 (Tex. App.—Houston [1st Dist.] 2016).

suit to the same extent as a school district".[89] Walker reads Section 12.1056(a) to make open-enrollment charter schools liable whenever school districts are. Section 12.1056(a), Walker argues, not the WBA, is "the applicable statute" under Section 12.1058(c). But this blanket identification of open-enrollment charter schools with school districts makes unnecessary the CSA's long list of specific instances in which an open-enrollment charter school is treated as a governmental entity or school district. And Walker's reading of Section 12.1056(a) completely nullifies Section 12.1058(c), which states that open-enrollment charter schools are not to be treated as governmental entities or school districts without a specific statement to that effect in the applicable statute. In our view, the two provisions can easily be read to complement each other: an open-enrollment charter school is not to be treated as a governmental entity or school district unless a statute specifically states that it is, but when there is such a statute, the open-enrollment charter school's immunity from liability and suit is the same as a school district's.

Walker further argues that this interpretation of Section 12.1058(c) conflicts with Section 12.103(a), which provides that charter schools are "subject to federal and state laws and rules governing public schools".[90] But again, Walker's reading of Section 12.103(a) is inconsistent with the CSA's structure and nullifies Section 12.1058(c). When Section 12.103(a) is read in context with the CSA's other provisions, it clearly means that charter schools are generally subject to the same laws as public schools, but there are exceptions. The very next sentence, Section 12.103(b), is one:

---

[89] TEX. EDUC. CODE § 12.1056(a).

[90] *Id.* § 12.103(a).

16

charter schools are not subject to the Education Code and rules promulgated under it unless the statute or a rule specifically says so.[91] Section 12.1058(c) is simply another.

Finally, Walker argues that requiring every statute to specifically state whether it is applicable to charter schools is an absurd result. But the Legislature has already gone a long way in doing just that, specifically making statutes applicable to governmental entities also applicable to open-enrollment charter schools 16 times.

Read together, Sections 12.1056(a) and 12.1058(c) provide that under a statute specifically applicable to charter schools, including those listed in the CSA, an open-enrollment charter school is as immune from liability and suit as a school district. The WBA does not apply specifically to open-enrollment charter schools and is not listed in the CSA. Thus, the WBA does not apply to open-enrollment charter schools. The result in *LTTS II* remains unchanged because the Texas Tort Claims Act's definition of "governmental unit", which determines the right of interlocutory appeal, is applicable to open-enrollment charter schools under the CSA.[92] The same is true for the result in *LTTS III* because the Local Government Contract Claims Act is listed in the CSA.[93] Only the court of appeals' decision in *Pegasus* is inconsistent with our holding today.

*     *     *     *     *

Accordingly, the judgment of the court of appeals is reversed and judgment is rendered that Walker take nothing.

---

[91] *Id.* § 12.103(b).

[92] *Id.* § 12.1056(b).

[93] *Id.* §§ 12.1056(d), 12.1058(a)(4).

_____

Nathan L. Hecht
Chief Justice

Opinion delivered: April 13, 2018

18