# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00279-CV

**Mike Morath, in His Official Capacity as Commissioner of Education for the Texas Education Agency, Appellant**

**v.**

**Texas State Teachers Association, Appellee**

### FROM THE 200TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-20-003787 THE HONORABLE KARIN CRUMP, JUDGE PRESIDING

## O P I N I O N

The Texas State Teachers Association (TSTA), a state-wide professional association whose members are employed by the public schools of Texas, sued Mike Morath, in His Official Capacity as Commissioner of Education for the Texas Education Agency, challenging the validity of an administrative rule the Commissioner had adopted. The parties filed cross-motions for summary judgment. The trial court granted TSTA's motion and rendered judgment declaring the challenged rule invalid. We will affirm in part and reverse and render in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Section 39.053 of the Texas Education Code sets out academic performance standards for Texas school districts and campuses. *See* Tex. Educ. Code § 39.053. Chapter 39A of the Code authorizes the Commissioner to implement certain interventions and sanctions if a school district does not satisfy those standards. *See id.* §§ 39a.001–.907. Section 11.174 of the

Code sets forth procedures by which a school district may, under certain circumstances, contract with an "operating partner" for the partner to operate an underperforming campus within the school district. *See id.* § 11.174.[1] A school district that enters into such a contract qualifies for an exemption from intervention and sanctions—and also qualifies for additional funding—if the entity with which it contracts is either (1) the governing body of an open-enrollment charter school (as described in Subchapter D of Chapter 12 of the Code), or (2) an entity granted a charter by the school district under Subchapter C of Chapter 12 (and which is one of four types of eligible entities listed in Section 12.101(a) of the Code). *See id.* § 11.174(a). Whichever type of entity the school district contracts with, the district campus "must be granted a charter under Subchapter C of Chapter 12."[2] *See id.* § 11.174(d). This means that the partnered campus becomes a Chapter C "district-campus" charter school, not a Chapter D open-enrollment charter school.[3] Section 11.174(m) gives the Commissioner authority to adopt rules as necessary to administer Section 11.174. *See id.* § 11.174(m).

---

[1] Chapter 11 of the Education Code deals with school districts generally. Subchapter D of Chapter 11, in which Section 11.174 is located, is titled "Powers and Duties of Board of Trustees of Independent School District."

[2] Chapter 12 of the Education Code is titled "Charters" and concerns exclusively Texas charter schools. Subchapter C of Chapter 12, titled "Campus or Campus Program Charter," deals with charter schools that are approved and created by the board of trustees of a school district or the governing body of a home-rule school district. Subchapter D of Chapter 12, titled "Open-Enrollment Charter School," deals with charter schools that are created by the Commissioner's grant of an application from an eligible entity for an open-enrollment charter school.

[3] The El Paso Court of Appeals' opinion in *Morath v. Texas American Federation of Teachers,* 646 S.W.3d 40 (Tex. App.—El Paso 2022, pet. denied), contains an excellent discussion of the background behind the Legislature's creation and treatment of Texas charter schools and the application of Section 11.174 to underperforming schools in Texas. *Id.* at 43–45; *see also Martinez v. San Antonio All. of Tchrs. & Support Pers.,* No. 04-18-00421-CV, 2019 WL 1548431, at *2–3 (Tex. App.—San Antonio Apr. 10, 2019, pet. denied) (mem. op.).

The Commissioner adopted administrative Rule 97.1075 setting out requirements for a school district's contract with an operating partner to operate an underperforming campus pursuant to Section 11.174(a). *See* 19 Tex. Admin. Code § 97.1075 (2024) (Tex. Educ. Agency, Planning and Accounting). Subsection (c)(1) of that rule, about which TSTA complains, provides as follows:

> (c) Conferred authority. In order to qualify as operating a district campus under TEC, §11.174, the district must confer, at a minimum, the following enhanced authorities to the operating partner.
>
> (1) Staffing authorities.
>
> (A) The operating partner must have authority to employ and manage the campus chief operating officer, including initial and final non-delegable authority to hire, supervise, manage, assign, evaluate, develop, advance, compensate, continue employment, and establish any other terms of employment.
>
> (B) The operating partner must have authority over the employees of the operating partner, including initial and final non-delegable authority for the operating partner to employ and/or manage all of the operating partner's own administrators, educators, contractors, or other staff. Such authority includes the authority to hire, supervise, manage, assign, evaluate, develop, advance, compensate, continue employment, and establish any other terms of employment.
>
> (C) The operating partner must have sole authority over the assignment of all district employees to the campus, including initial and final authority to approve the assignment of all district employees or contractors to the campus.
>
> (D) The operating partner must have initial, final, and sole authority to supervise, manage, evaluate, and rescind the assignment of any district employee or district contractor from the campus. If the operating partner rescinds the assignment of any district employee or district contractor, the district must grant the request within 20 working days.
>
> (E) The operating partner must directly manage the campus principal or chief operating officer, including having the sole responsibility for

3

> evaluating the performance of the campus principal or chief operating officer.

19 Tex. Admin. Code § 97.1075(c)(1).

Pursuant to Section 2001.038 of the Texas Administrative Procedure Act, TSTA filed suit for declaratory judgment challenging Rule 97.1075(c)(1) as being beyond the Commissioner's authority and therefore facially invalid. Section 2001.038 waives sovereign immunity in a suit for declaratory judgment challenging the validity or applicability of an administrative rule "if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff." Tex. Gov't Code § 2001.038(a).

TSTA pleaded that Rule 97.1075(c)(1)'s grant to the operating partner of "final" and "sole" authority over "district employees" improperly limits the contractual and statutory rights and benefits of public school teachers in Texas. There being no disputed issues of fact, the parties filed cross-motions for summary judgment. The trial court granted TSTA's motion and declared Subsection (c)(1) of the rule invalid in its entirety. The Commissioner perfected this appeal.

## DISCUSSION

On appeal, the Commissioner argues that the district court erred in holding any of Subsection (c)(1) of Rule 97.1075 invalid. In the alternative, he asserts that the court erred in holding Subsections (c)(1)(A), (B), and (E) invalid.

The standards for evaluating the validity of an agency rule are well established:

> Agency rules are presumed valid, and the challenger has the burden of proving a rule's invalidity. A challenger can meet this burden by showing that the

4

challenged rule (1) contravenes specific statutory language; (2) runs counter to the general objectives of the statute; or (3) imposes additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions.

*Public Util. Comm'n of Tex. v. Luminant Energy Co. LLC*, 691 S.W.3d 448, 460 (Tex. 2024) (citations omitted). "State agencies are statutory creatures and have no inherent authority other than those powers the Legislature expressly confers." *Davis v. Morath*, 624 S.W.3d 215, 222 (Tex. 2021) (quoting *Cadena Comercial USA Corp. v. Texas Alcoholic Beverage Comm'n*, 518 S.W.3d 318, 334 (Tex. 2017)).

### Subsections (C) and (D) of Rule 97.1075(c)(1)

Subsections (C) and (D) of Rule 97.1075(c)(1) give the operating partner "final" and "sole" authority over "district employees" who are assigned to a district-campus charter school created under Section 11.174(a) of the Education Code. Significantly, TSTA and the Commissioner both agree that such employees, including teachers, remain employees of their school district even after assignment to such a charter school.

The Commissioner argues that the fact that such employees are still employees of the school district means that they still have all the statutory rights that other school district employees have, including the right to file a grievance about actions by administrators that they believe are improper or illegal (*see* Tex. Educ. Code § 11.1511(b)(13)), the right to appeal to the Commissioner any adverse administrative decision (*id.* § 7.057(a)), the right to appeal an adverse decision by the Commissioner to a district court in Travis County (*id.* § 7.057(d)), and the litany of educators' rights contained in Section 21 of the Education Code (*id.* §§ 21.001–.806). The Commissioner thus argues that teachers and other district employees assigned to the district-campus charter school are not harmed by Subsections (C) and (D) of Rule 97.1075(c)(1).

5

In response, TSTA argues that Subsections (C) and (D)'s grant to the operating partner of "final and sole authority" over school-district employees appears on its face to deprive such employees of statutory rights they have as district employees and is therefore inconsistent with relevant statutory provisions. We agree with TSTA.

Although we have found no decision by a Texas appellate court construing the phrase "final authority," courts in other jurisdictions have held that such a phrase makes the decisionmaker's decision unreviewable. In *Barber v. Commission on Selection & Tenure of Administrative Law Judges*, 259 A.3d 62 (D.C. 2021), for example, the District of Columbia Court of Appeals reviewed a provision of the District of Columbia Code giving the Commission on Selection and Tenure of Administrative Law Judges ("COST") "final authority to appoint, reappoint, discipline, and remove Administrative Law Judges." *Id.* at 70. The court held, first, that the phrase "final authority" meant that the decision-making body's decision was unreviewable:

> In common and legal parlance, the word "final" is usually understood to mean "not to be changed or reconsidered; unalterable," while the word "authority" denotes the "power to . . . command, determine, or judge." On their face, the words "final authority" do not merely suggest, they mean that COST's exercise of its power over ALJs is not subject to judicial or other revision.

*Id.*; *see also Goode v. D.C.*, No. 21-7038, 2022 WL 1275370, at *2 (D.C. Cir. Apr. 29, 2022) (following *Barber*).

In addition, the *Barber* court noted that other courts, including the United States Supreme Court, have reached similar results. For example, a provision of the National Labor Relations Act giving the general counsel of the National Labor Relations Board "final authority" over the investigation of charges, issuance of complaints, and prosecution of such complaints before the Board has been consistently construed to forbid review of the general counsel's

6

decisions:  "In a long and unbroken series of decisions by the Supreme Court and the Courts of Appeal, this provision . . . ha[s] been interpreted to preclude judicial review . . . ."  *Barber*, 259 A.3d at 70 (quoting *Becker v. NLRB*, 678 F. Supp. 406, 408 (E.D.N.Y. 1987), and citing other cases).

The *Barber* court also noted that "[s]tate courts interpreting analogous provisions of their own laws containing the term 'final authority' have reached similar conclusions."  *Id.* at 70–71 (citing *United Farm Workers of America, AFL-CIO v. Arizona Agric. Emp't Rels. Bd.*, 672 P.2d 1327, 1331 (Ariz. Ct. App. 1983) ("[T]he legislature intended that . . . general counsel's discretion to either file or refuse to file a complaint is absolute and not judicially reviewable.  The language of the statute that general counsel is the 'final authority' clearly mandates that result.")).

Thus, the language of Subsections (C) and (D) of Rule 97.1075 would, if implemented as written, deprive Texas public school teachers assigned to district-campus charter schools of numerous statutory rights, including the right to file grievances and appeal adverse grievance decisions to the Commissioner and beyond, that are possessed by all Texas teachers employed by public school districts.  *See, e.g.*, Tex. Educ. Code § 7.057(a) (allowing appeal to Commissioner); *id.* § 7.057(d) (allowing appeal to Travis County district court of adverse decision by Commissioner); *id.* §§ 21.001–.806 (listing various rights for Texas educators).

Although the Commissioner does not rely on Section 12.055(a) of the Education Code in this appeal, we deem it appropriate to briefly discuss that provision.  Section 12.055(a) provides:

> A campus or program for which a charter is granted under this subchapter is subject to federal and state laws and rules governing public schools, except that the campus or program is subject to this code and rules adopted under this code only to the extent the applicability to a campus or program for which a charter is granted under

7

this subchapter of a provision of this code or a rule adopted under this code is specifically provided.

*Id.* § 12.055(a). This provision is contained in Subchapter C of Chapter 12 of the Education Code and therefore applies only to district-campus charter schools, but a virtually identical provision exists in Subchapter D (applicable to open-enrollment charter schools). *See id.* § 12.103(b). The Texas Supreme Court has construed Section 12.103(b) to mean that "charter schools are not subject to the Education Code and rules promulgated under it unless the statute or a rule specifically says so." *Neighborhood Ctrs. Inc. v. Walker*, 544 S.W.3d 744, 754 (Tex. 2018) (construing Tex. Educ. Code § 12.103(b)). Such a construction would presumably apply equally to Section 12.055(a).

But Section 12.055(a) serves only to limit the statutory provisions to which district-campus *charter schools* are subject; it does not purport to divest public school *teachers* of their statutory rights. Thus, while Section 12.055(a) gives charter schools heightened flexibility in the operation of their campuses, we hold that the Legislature did not intend for that provision to deprive Texas teachers who happen to be assigned to a district-campus charter school (but who are still employees of their school district) of all their statutory rights. A contrary construction of Section 12.055(a) could, among other effects, create an enormous disincentive for teachers to agree to teach at a charter school at all and thus be at odds with the overall vision and purpose of charter schools. *See Neighborhood Ctrs.*, 544 S.W.3d at 749 (holding that a central purpose of Charter School Program Act of 1995, Tex. Educ. Code Chap. 36A, was to "attract new teachers to the public school system."). Teachers at a district-campus charter school must, at the very least, have the right to complain about improper or illegal treatment and, if desired, appeal to the Commissioner and a Travis County district court.

Because Subsections (C) and (D) of Rule 97.1075, as written, would limit—if not wholly eliminate—various statutory rights of Texas public school teachers, we hold that those subsections "impose[] additional burdens, conditions, or restrictions in excess of or inconsistent with the relevant statutory provisions." *Public Util. Comm'n of Texas v. Luminant Energy Co. LLC*, 691 S.W.3d 448, 460 (Tex. 2024). Accordingly, the trial court did not err in declaring those subsections invalid.

### Subsections (A), (B), and (E) of Rule 97.1075(c)(1)

Unlike Subsections (C) and (D) of Rule 97.1075(c)(1), both of which expressly apply only to "district employees," Subsections (A), (B), and (E) of the rule give the operating partner final authority over *employees of the operating partner*, i.e., individuals employed directly by the operating partner as opposed to school district teachers and other employees who are "assigned" to the charter-campus but remain employees of the school district. Employees hired directly by the operating partner of a district-campus charter school do not have the same statutory rights and protections that public school district teachers in Texas have. Accordingly, giving the operating partner unreviewable authority over those employees does not deprive them of statutory rights in the same way that Subsections (C) and (D) deprive public school teachers of their rights. We conclude that the trial court erred in declaring Subsections (A), (B), and (E) of Rule 97.10075(c)(1) invalid and therefore sustain the Commissioner's alternative issue concerning those subsections.

## CONCLUSION

Having sustained the Commissioner's alternative issue concerning Subsections (A), (B), and (E) of Rule 97.10075(c)(1), we reverse the trial court's judgment in that respect and

render judgment declaring those provisions of the rule valid.  We affirm the trial court's judgment in all other respects.

_____

J. Woodfin Jones, Justice

Before Justices Theofanis, Ellis, and Jones*

Affirmed in Part, Reversed and Rendered in Part

Filed:   May 21, 2025

*Before J. Woodfin Jones, Chief Justice (Retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).